Miller *v.* Benton.

---

GEORGE D. MILLER *vs.* FREDERICK H. BENTON AND ANOTHER.

New Haven Co., June T., 1887.    PARK, C. J., CARPENTER, PARDEE, LOOMIS and STODDARD, Js.

The statute, (Gen. Statutes, p. 354, sec. 17,) provides that "the tenant of any tenement which may be, without his loss or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent after such injury, so long as such tenement is untenantable, if he continues to occupy, unless it be otherwise expressly provided by written agreement ; but if the same shall become fit for occupancy during the continuance of his lease he shall then pay the rent and may again occupy it." Held that after such an injury to the tenement the lessor, if he would avail himself of the provisions of the statute, must make the necessary repairs with reasonable diligence.

The obligation of the lessee to pay rent after the building is repaired, is not a new statutory obligation, but a contract obligation revived by the statute.

And it seems that it would not be necessary in a complaint to aver the facts with regard to the suspension and revival of the contract obligation. It is enough if it was a subsisting legal obligation when the suit was brought, and is declared on as such.

The statute applies to mere rooms in a building, leased by themselves, as well as to an entire building.

Where a lessee whose obligation to pay rent has become suspended by such an injury to the leased premises as makes them untenantable, gives notice that he shall not return and occupy after the building is restored, and the lessor does not join with him in rescinding the contract, the act of the lessee does not constitute a breach of the contract for which an action will lie, but he is liable only for rent, to be sued for as such when it becomes due.

If the lessor should join with the lessee in rescinding the contract, it would no longer exist as a basis for recovering either damages or rent.

VOL. LV.—34

Where it was found that the lessor, after the refusal of the lessee to re-oc-
cupy and pay rent, received his refusal as a final breach of the con-
tract and accepted the premises, but did not intend to relinquish his
right to damages, it was held that, since he could not retain any rights
under the contract if it was rescinded, and the rescinding was a matter
of intent, he would be regarded as taking possession of the premises as
a necessary thing in the circumstances, and without an intent to aban-
don his rights under the lease.
And held that it made no difference that the lessor regarded his rights
under the lease as a right to damages, as his intention to retain his
rights under the lease was inconsistent with an intention to rescind the
contract, whatever those rights might be.
Where, after notice from the lessee that he should not again occupy and
pay rent the lessor proceeded to repair the building, it was held that
the lessee could not set up in his defence to a suit for after-accruing
rent, that the repairs were not made with reasonable diligence.
Nor that the lessor had leased a part of the premises to another tenant,
the rent received from such tenant going to reduce his claim on the
original lessee.
Where the complaint set out all the facts of the case, but was founded upon
a claim for damages and demanded damages and not rent, but the
averments were all that were necessary for the recovery of rent, it was
held that judgment could be rendered for the rent due at the time the
suit was brought.

[Argued June 14th—decided December 16th, 1887.]

ACTION for a breach of contract by the defendants as
lessees for a term of years of certain rooms in a building
belonging to the plaintiff, in refusing to re-occupy and pay
rent for the same after they had been rendered untenanta-
ble by fire and had been repaired by the plaintiff within the
term ; brought to the Superior Court in New Haven County.
A demurrer to the complaint was overruled by *Beardsley, J.*,
and at a later term the case was tried to the court before
*Torrance, J.*

The following facts were found by the court :

The plaintiff, on the 3d day of July, 1884, leased to the
defendants by a written instrument certain rooms upon the
second, third and fourth floors of a building owned by him,
and known as 84 and 94 Temple street, in the city of New
Haven, for the term of two years and ten months from the
first day of July, 1884, for the annual rent of $1,150, paya-

ble in monthly payments of $95.83 each on the first day of each month. The defendants occupied the rooms, and used them in their business of manufacturing paper boxes by the use of machinery, from the date of the lease until the 18th day of October, 1884, and the rent was fully paid by the defendants until that date. On that day the building in which the rooms were located, without the fault or neglect of the defendants, took fire, and the rooms were injured by fire to such an extent that they became untenantable, and the stock, machinery and tools of the defendants were either wholly consumed or injured to such an extent as to be unusable and almost valueless. The side walls of the building remained substantially uninjured, and the roof was not entirely consumed. The floors were badly injured, but remained strong enough to bear the workmen who repaired them. The stairways to the premises leased by the defendants were destroyed. Two of the leased rooms were not so badly injured as the others.

The defendants carried on a large business, employing from thirty-five to forty persons, turned out about forty thousand boxes per day, which were sold to consumers and jobbers, and had large contracts with manufacturers and others, binding them to furnish a stated supply of boxes of different sizes and descriptions at stated times. On Monday morning, October 20th, at seven o'clock, the defendants, without notice to the plaintiff, began the erection of a new building in another part of the city, to be used in their business of manufacturing paper boxes. On that day the plaintiff wrote the following letter to the defendants:

"NEW HAVEN, Oct. 20th, 1884.

"Messrs. Benton, Nichols & Co., 84 to 94 Temple st., New Haven.

"Gentlemen: The morning papers report that you are making arrangements to resume business in a new building rather than on the premises now leased by you on Temple street. Please take notice that I shall proceed with all reasonable dispatch to restore said premises to good condi-

tion, as I am advised that our mutual rights and obligations under the lease signed July 3d, 1884, will not be affected by the recent fire, save during the period required for necessary repairs. Hoping that our former relations may not be disturbed by our common misfortune, I remain yours,

"GEORGE D. MILLER, by H. C. WHITE, Att'y."

The defendants on the same day sent the following reply:

"NEW HAVEN, Oct. 20th, 1884.

"Mr. Geo. D. Miller. Dear Sir: We herein notify you that we shall not again occupy the premises Nos. 84 to 94 Temple st. Yours truly, BENTON, NICHOLS & Co."

On the next day the plaintiff sent them the following letter:

"NEW HAVEN, Oct. 21st, 1884.

"Messrs. Benton, Nichols & Co. Gentlemen: Yours of Oct. 20th is at hand, giving notice that you will 'not again occupy the premises Nos. 84 to 94 Temple street.' This letter is to inform you that I shall require you to reimburse me for any and all losses which I may incur in consequence of your breach of the covenants contained in the lease signed by you on July 3d, 1884. Yours truly,

"GEORGE D. MILLER, by HENRY C. WHITE, Att'y."

Some time in November, 1884, the defendants removed from the plaintiff's premises such of their machinery, stock and property belonging to them as had not been entirely consumed by fire, and which had remained there from the time of the fire without objection on part of the plaintiff. After the fire the plaintiff had half a dozen conferences with his architect about plans for rebuilding the building in which the apartments occupied by the defendants had been located. Several days intervened between the different conferences. The architect drew two or three different plans before the plaintiff settled upon the one to be followed, which was not done until the middle of December. The contract with the joiner for the reconstruction of the building was signed

December 20th, 1884, and the work of reconstruction did not begin until after that time.

The defendants, in order that they might resume business and perform their contract obligations with others, pressed forward the completion of the new building begun by them on the 20th of October, and it was completed and occupied by them, shafting, presses and other machinery put in, and boxes turned out and shipped on November 24th following. The new building was of brick, contained three floors, and was seventy by forty feet. The plaintiff was aware of the nature of the business carried on by the defendants, and of the loss that would accrue to them by reason of the stoppage on account of the fire.

If the work of restoration had been begun by the plaintiff at once after the fire, it could have been completed in two months from that time, and, if all practicable speed had been used, could have been done in six weeks from that date.

On February 14th, 1885, the plaintiff notified the defendants by letter that the rooms formerly occupied by them in his building had been restored, and that he should hold them responsible for whatever loss he should sustain by reason of their breach of contract. The premises had been substantially restored to their former condition, but the room formerly occupied by the defendants as an office had not been partitioned off and separated from another room, as it was previous to and at the time of the fire, and an elevator that had before the fire been in place and used by the defendants in their business had not been so put up that it could in its then condition be used. The defendants replied by the following letter:

"NEW HAVEN, Feb. 16th, 1885.

" Geo. D. Miller, Dear Sir: We herein give you notice, as we have done before, that we shall not again occupy premises Nos. 84 to 94 Temple street, and we shall pay *no loss* which you may incur by reason of your premises not being again occupied. Yours, etc.,

"BENTON, NICHOLS & CO."

I find as a fact that the restoration of the building was not begun by the plaintiffs within a reasonable time after the fire, nor after it was begun was such restoration carried on and completed within a reasonable time.

On January 1st, 1885, the plaintiff, without the knowledge or consent of the defendants, executed and delivered to another person as tenant a written lease, in the ordinary printed form in use in this state, of one of the rooms which had formerly been occupied by the defendants, and which was injured less than the others, for the term of sixteen months from that date, and gave possession of the room to the new tenant, and it was occupied and used by him. The room was a material part of the premises occupied by the defendants. The plaintiff has, from time to time since the first day of January, 1885, and without notice to the defendants, leased the rooms in the building constructed in the place of those formerly occupied by the defendants, to various persons, upon such terms and for such times as seemed best to him; and the whole of the premises formerly occupied by the defendants have now been leased by the plaintiff to different tenants, who are in the occupation and use of the same under the plaintiff, and paying him rent therefor, some of whose terms run beyond May 1st, 1887. Since the time of the fire the plaintiff has in fact exercised, and since the receipt of the letter of October 20th, 1884, from the defendants, has claimed the right to exercise, full control and dominion over the premises leased to the defendants, without their knowledge or consent. At the time the letter of February 16th, 1885, was sent by the defendants they did not know of the existence of the written lease made by the plaintiff on January 1st, 1885, of a part of the premises.

The defendants have never occupied or claimed the right to occupy any part of the premises leased to them since the fire, except as herein stated, nor have they paid any rent or compensation of any kind to the plaintiff since the fire. On October 20th, 1884, the defendants intended to, and did, so far as they alone could, surrender to the plaintiff the leased

premises, and all rights under the lease, and intended to pay no more rent under the lease. The plaintiff accepted the conduct and declarations of the defendants as a final breach of all the covenants in the lease on their part to be kept and performed and accepted the premises, but did not intend thereby to in any way release the defendants from his claim against them for damages arising from said breach. The plaintiff used due diligence in re-renting the premises after the fire, and the amount of rent obtained by him was all that could have been obtained by the use of due diligence. The amount of rent due under the lease from February 18th, 1885, to May 1st, 1887, with interest, is $2,611.52. The amount received and to be received by the plaintiff as rents from divers parties to whom he has leased the premises between the same dates, is $1,187.70. Upon these facts the court rendered judgment for the defendants and the plaintiff appealed.

*J. W. Alling* and *H. C. White,* for the appellant.

1. The contract of lease was not terminated by the fire. Clearly it would not have been at common law. *Lockwood* v. *Lockwood,* 22 Conn., 434; *School District* v. *Dauchy,* 25 id, 536; 3 Kent Com., 466, 467; 3 Sutherland on Damages 126; Wood's Landlord and Tenant, 602. This rule has been modified in regard to large buildings, where different tenants occupy separate stories, one above another. *Stockwell* v. *Hunter,* 11 Met., 448: *Graves* v. *Berdan,* 26 N. York, 498; *Winton* v. *Cornish,* 5 Ohio, 477. These cases, and the others which have followed them, deal with buildings which were *entirely destroyed* by fire, so that the subject matter of the contract disappeared, and the rights of the several tenants to the premises, had they been claimed, would have come in conflict on a single piece of ground, where the building had stood. In this case the building was not destroyed. Its walls remained, and the floors were strong enough to allow the workmen to repair each room by itself, without disturbing parties above or below. This case, then, does not present such facts as would take it out of the rule

laid down by Kent, even if the cases above mentioned were good law in Connecticut. But besides showing a good cause of action at common law, this case clearly falls within the following statute : " The tenant of any tenement which may be, without his fault or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent after such injury, so long as said tenement is untenantable, if he continue to occupy, unless it be otherwise expressly provided by written agreement; and in case of such injury he may quit possession of such tenement; but if the same shall become fit for occupancy during the continuance of his lease, he shall then pay the rent, and may again occupy." Gen. Statutes, p. 354, sec. 17. This statute applies to " any tenement," and the premises leased by the defendants were a tenement. This word has a very comprehensive signification in law, including within its compass every species of real property which may be held, or in respect to which a "person may be a tenant." 2 Abbott's Law Dict., *in verbum*, The statute provides that if after the injury the tenement ' shall become fit for occupancy' during the continuance of the lease, he (the tenant) *shall* then pay the rent." It is clear, therefore, that the fire did not terminate the contract of lease.

2. The words and conduct of the defendants on October 20th, 1884, when acted upon by the plaintiff, constituted a complete and final breach of the contract of lease, and an action could be brought for the breach. *Hochster* v. *De la Tour*, 2 El. & Bl., 690; *Frost* v. *Knight*, L. R., 7 Exch., 111; *Danube & Black Sea Railway Co.* v. *Xenos*, 11 Com. Bench, N. S., 152, and 13 id., 825; *Johnstone* v. *Milling*, 16 Q. B. Div., 460, 467; *Smoot's Case*, 15 Wall., 49; *Dingley* v. *Oler*, 117 U. S. R., 490 ; *Crabtree* v. *Messersmith*, 19 Iowa, 182; *Holloway* v. *Griffith*, 32 id., 413; *Fox* v. *Kitton*, 19 Ill., 533; *Chamber of Commerce* v. *Sollitt*, 43 id., 523; *Dugan* v. *Anderson*, 36 Maryl., 583; *Burtis* v. *Thompson*, 42 N. York, 250; *Day* v. *Conn. Gen. Life Ins. Co.*, 45 Conn., 480, 497; Benjamin on Sales, 4th ed., 641. The American courts generally, with the exception of the Su-

preme Court of Massachusetts, hold this view. The damages recovered should be the entire damages for the whole term. 1 Sutherland on Damages, 177, 187, 195; 1 Sedgw. on Dam., 202; 3 Parsons on Cont., 6th ed., 189; *Masterton* v. *Mayor &c. of Brooklyn*, 7 Hill, 61; *Remelee* v. *Hall*, 31 Verm., 585.

3. The plaintiff did all that the law required of him in order that he might recover from the defendants the damages caused by their breach of contract. (1.) He gave all reasonable notices to the defendants. (2.) He restored the premises to tenantable condition, and claims damages only after the restoration. (3.) The repairs were completed within the time required by statute to make the defendants liable. The question of the reasonableness of the time is raised by the finding. In all the circumstances a few weeks delay was not unreasonable. The question of reasonableness must of course he viewed in the light of the fact that the defendants had broken the contract and that the entire loss caused by the delay was to fall upon the plaintiff. The statute, however, says nothing about completing the repairs within a reasonable time. It says: "If the premises shall become fit for occupancy during the continuance of the lease," etc. And the record shows that the repairs were completed and the premises made fit for occupancy within seven and a half months from the time when the lease was signed, and more than twenty-six months before the end of the defendants' term. But this did not in any way concern the defendants, as they had already broken their contract and did not wish to re-occupy. When he had used due diligence to reduce the loss caused by the defendants' breach, his duty was discharged.

4. The plaintiff did nothing to release the defendants from their liability for damages. It was his duty to let the premises if he could, to make the defendants' loss as small as possible. 1 Sutherland on Damages, 177; *Allen* v. *Jarvis*, 20 Conn., 48; *Perry* v. *Simpson Waterproof Mfg. Co.*, 37 id., 540.

*J. T. Platt* and *M. F. Tyler*, for the appellees.

1. It must be conceded that at common law where there is a lease of lands and buildings, the destruction of the buildings does not relieve the lessee from his covenant to pay rent during the term. This has been considered a harsh rule, and is disapproved by Rutherford and other writers upon natural law. Judges have expressed themselves to the effect that it was inequitable and unjust, but too firmly settled to be shaken by judicial decision. Rutherford's Institutes, 127; Pufendorf's Law of Nature, book 5, ch. 6, sec. 2; *Gates* v. *Green*, 4 Paige, 355. The civil code of France provides that "if during the term the thing rented is totally destroyed by accident, the lease is canceled entirely; if it is only partially destroyed, the holder can, according to circumstances, ask a decrease in the price or a concellation of the lease itself. In neither case is there room for any damages." Substantially the same provision is found in the civil code of Louisiana, Art. 2667. *Coleman* v. *Haight*, 14 La. Ann., 564. The common law rule upon this subject was changed in New York by chapter 345 of the laws of 1860, which provided that "the lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement." In 1869 the law was changed in Connecticut by chapter 92 of the acts of that year, which provided as follows: "That the lessee, lessees or occupants of any building which shall have been or shall be, without any fault or neglect on their part, destroyed, or so injured by the elements or any other cause as to be untenantable or unfit for occupancy, shall not be liable or bound to pay rent to the lessor, lessors or owners thereof after such destruction or injury, unless otherwise expressly provided by written agreement between such parties; and in case of such destruction or injury, such lessee, lessees or occupants may

Miller v. Benton.

thereupon quit possession of such building, land and prem-
ises so leased or occupied, and surrender the same to the
lessor or owners thereof, and require the cancellation of the
lease (if in writing) under which the same was held or
occupied." Under the hand of a revising committee this
wholesome statute ripened into the following: " The ten-
ant of any tenement which may be, without his fault or
neglect, so injured as to be unfit for occupancy, shall not be
liable to pay rent after such injury, so long as said tenement
is untenantable, if he continue to occupy, unless it be other-
wise expressly provided by written agreement; and in case
of such injury he may quit possession of such tenement, but
if the same shall become fit for occupancy during the con-
tinuance of his lease, he shall then pay the rent, and may
again occupy it." Gen. Statutes, p. 354, § 17. While the
common law rule is as stated as regards a lease of land, it is
equally well settled that where there is a lease of apartments
in a building, and they are destroyed or rendered untenant-
able by fire or other casualty, the interest of the lessee
ceases, and the relation of landlord and tenant is, upon the
happening of such an event, dissolved. *Winton* v. *Cornish*,
5 Ohio, 477; *Stockwell* v. *Hunter*, 11 Met., 448; *Shawmut
Nat. Bank* v. *City of Boston*, 118 Mass., 125; *Graves* v.
*Berdan*, 26 N. York, 498; *Womack* v. *McQuarry*, 28 Ind.,
103; *Kerr* v. *Merchants' Exch. Co.*, 3 Edw. Ch., 315; *Ains-
worth* v. *Ritt*, 38 Cal., 89; *McMillan* v. *Solomon*, 42 Ala.,
356; *Harrington* v. *Watson*, 11 Oregon, 143. This rule of
the common law as respects apartments in a building is not
changed by the statute law of this state, which is remedial
in its nature and intended for the relief of tenants, and
which applies to leasehold interests in lands as well as the
buildings thereon.

2. Whatever view may be taken of this point, the plaintiff
cannot recover. The contract upon which he sues, and of
which he claims there was a breach by the defendants, is
the covenant to pay rent. The legal effect of this covenant
was not to pay the rent absolutely and at all events. Vari-
ous facts or events might arise during the term that would

change the legal relations of the parties, and operate in law as a discharge of the obligation of the lessees. Rent is what is rendered by the tenant to the landlord for the beneficial use and enjoyment of the premises demised, and upon the happening during the term of facts for which the landlord is responsible, by reason of which the tenant is deprived of such use and enjoyment, the obligation to pay rent ceases. It is, so to speak, conditioned upon the continued occupation and enjoyment of the demised premises so far as the landlord can assure it. If, therefore, the tenant abandons possession and the landlord enters and exercises acts of dominion, the rent ceases. The act of abandonment is of no legal significance, and the obligation to pay rent continues; but if the landlord enters, it ceases. It is construed as a surrender and acceptance, irrespective of the intention of the landlord. *Wood* v. *Wallbridge*, 19 Barb., 136; *Schuisler* v. *Ames*, 16 Ala., 73; *Talbot* v. *Whipple*, 14 Allen, 180; *Randall* v. *Rich*, 11 Mass., 494. If the landlord expels the tenant it is an eviction, and the tenancy and liability for rent are terminated at the option of the lessee. *Upton* v. *Townsend*, 17 C. B., 30; *Leishman* v. *White*, 1 Allen, 489. If the landlord, during the continuance of the term, demises the premises to others who go into occupation it is treated as an eviction by the landlord. *Rice* v. *Dudley*, 65 Ala., 68; *Walls* v. *Atcheson*, 3 Bing., 462. If the landlord is guilty of acts that defeat the purposes of the tenant's occupation, such acts may amount to an eviction in law. *Hayner* v. *Smith*, 63 Ill., 430; *Pendleton* v. *Dyett*, 4 Cow., 581. If the tenant is evicted from a material portion of the premises, he may treat it as an eviction from the whole, and may abandon his lease and will no longer be responsible for rent. *Sherman* v. *Williams*, 113 Mass., 481; *Colburn* v. *Morrill*, 117 id., 262; *Morrison* v. *Chadwick*, 7 C. B., 266. By the express terms of the act of 1869, even in its revised form (Gen. Stat., p. 354, § 17), the tenant is not liable to pay rent when the premises, without his fault or neglect, are so injured as to be unfit for occupancy.

3. It is found as a fact by the court that the defendants

on October 20th, 1884, surrendered the demised premises to the plaintiff, and they were accepted by him. The further finding that in accepting the premises he did not intend to release the defendants from his claim against them is wholly immaterial. There may be an effective surrender irrespective of the intention of a party, and even against his intention. If the landlord resumes full control of the premises with the assent of the tenant, it is a surrender and terminates the relation of landlord and tenant, and with it all the obligations of the parties in that relation as regards the future. The tenant only remains liable for rent due at the time of surrender. Taylor's Landlord & Tenant, § 518. The intention of the plaintiff to claim damages from the defendants was of no legal significance. What covenants had been broken by the defendants? They had paid their rent up to the time the premises were destroyed, when the statute suspended it. It is not alleged that they had committed waste, assigned the lease, or done any act whatever in violation of their covenants in the lease. The defendants did not covenant that they would occupy the premises. They covenanted to pay rent, and it was their option whether they would occupy or not. The plaintiff's contention is this: The statement by the defendants of a present intention not to do a future act, which they were under no legal obligation to do, constituted a complete and final breach of all their covenants in the lease. The statute in its revised form suspended all liability for rent from the time of the fire. The only way the plaintiff could afterward create any obligation on the part of the defendants to pay rent, was by making the premises fit for occupancy during the continuance of the term and giving the defendants the opportunity to occupy. If any rational meaning is to be read into the statute, it must be held that the repairs should be made within a reasonable time. The restoration of the premises (as we say within a reasonable time) and giving the defendants an opportunity to occupy, was a condition precedent to any liability on the covenant to pay rent. The plaintiff is pursuing the defendants for the violation of an alleged

duty on their part to pay him rent for the leased premises
since February 18th, 1885. Let us see how he has per-
formed his legal duties towards them. The court finds that
if the work of restoration had been begun by the plaintiff
at once after the fire, it could have been completed within
two months, and, if all practicable speed had been used,
within six weeks. Sixty days after the fire the work of
restoration had not even been begun. A month before the
plaintiff began the work of restoration the defendants had
resumed business in a brick building erected by them after
the fire. It is found that on January 1st, 1885, the plaintiff
leased one of the rooms embraced in the demise to the
defendants, and which the court finds was a material part of
the demised premises, to other parties for the term of six-
teen months and gave possession. This lease was in writing
and in it the plaintiff covenants that he has good right to
lease the premises, and it also contains the covenant for
quiet enjoyment. The court makes a further finding in
regard to the dealing of the plaintiff with the premises for
the rent of which he is now suing the defendants: " The
plaintiff has, from time to time since the first day of Janu-
ary, 1885, and without notice to the defendants, leased the
rooms in the building constructed in the place of those for-
merly occupied by the defendants to various persons, upon
such terms and for such times as seemed best to him, and
the whole of the premises formerly occupied by the defend-
ants have now been leased by the plaintiff to different ten-
ants, who are in the occupation and use of the same under
the plaintiff, and paying him rent therefor, some of whose
terms run beyond May 1st, 1887." If there has not been a
surrender of the lease there has certainly been an eviction.

LOOMIS, J. The defendants hired of the plaintiff certain
rooms for manufacturing purposes in a building owned by
him, for a term beginning July 1st, 1884, and ending May 1st,
1887, at an agreed monthly rent, and entered into the occu-
pancy of the leased premises. In October, 1884, the build-
ing was so damaged by fire that the rooms in question

became untenantable, and the defendants were compelled to seek new quarters for the prosecution of their business, an immediate continuance of which was of great importance to them. The plaintiff, in January, 1885, began to repair the building, and on the 14th day of February following notified the defendants that it was repaired and that he should hold them responsible for any loss that he should sustain from their breach of contract. They refusing to occupy or pay further rent, the plaintiff brought suit for the breach of their contract, which the court below decided against him, and he brings the case before this court by appeal.

The court below made a finding of the facts, and the following appear as the special ones affecting the question. The plaintiff, on the 20th of October, 1884, two days after the fire, wrote the defendants that he should "proceed with all reasonable dispatch to restore the premises to good condition"; to which they replied on the same day that they should not again occupy the premises. On the next day the plaintiff wrote them that he should require them to reimburse him for any loss in consequence of their breach of the covenants of their lease. The plaintiff had several conferences with his architect as to plans for the reconstruction of the building and the architect drew two or three different plans, and the contract for the work was not signed till December 20th, and the work was not completed till February 14th, 1885. The court finds that if the work had been begun at once after the fire it could have been completed in two months from that time, and if all practical speed had been used it could have been done in six weeks; and that "the restoration of the building was not begun within a reasonable time after the fire, nor, after it was begun, was it completed within a reasonable time." After the plaintiff had completed the work of restoration he wrote the defendants on the 14th of February that the building was repaired and that he should hold them responsible for his loss of rent. To this they replied on the 16th of February—" We herein give you notice, as we have

done before, that we shall not again occupy premises Nos. 84 to 94 Temple st., and we shall pay no loss which you may incur by reason of your premises not being again occupied." On the first of January the plaintiff, without consulting the defendants, had made a written lease to a third party for sixteen months of a room that had been but little injured by the fire and was a part of the space that had been leased to the defendants, and had put the lessee into possession; but at the time the defendants wrote their letter of February 16th, to the plaintiff, they did not know of this lease.

The plaintiff claims to recover under the provisions of the statute originally passed in 1869, but which appears in the General Statutes of 1875, p. 354, sec. 17, as follows:

" The tenant of any tenement which may be, without his fault or neglect, so injured as to be unfit for occupancy, shall not be liable to pay rent after such injury, so long as such tenement is untenantable, if he continue to occupy, unless it be otherwise expressly provided by written agreement; and in case of such injury he may quit possession of such tenement; but if the same shall become fit for occupancy during the continuance of his lease, he shall then pay the rent and may again occupy it."

A question is made whether a leased room is a "tenement" within the meaning of this statute. We see no reason to doubt that it is. The terms used are "tenant" and "tenement"—two words applied, both in popular and legal usage, to parts of a building leased without the land upon which the building stands, as well as to an entire building. We think the term covers everything that may be occupied under a lease; everything for which an action for use and occupation would lie at common law.

The action is brought to recover damages for the defendants' breach of their contract. But there was no breach of contract in their removal to new quarters, and none in their mere refusal in advance to pay any damage which the plaintiff might suffer from their non-occupancy of the premises. The case is unlike that of a party contracting to perform

certain work and before the time arrives giving notice of his determination not to perform it. Here the defendants were to do no act. Their occupancy or non-occupancy did not affect their obligation to pay the rent. The plaintiff did not join with them in rescinding the contract. It was the mere case of a debtor declaring beforehand that he should not pay his debt when it fell due. This would not be a breach of his contract. The breach would be committed only when the debt became due and was not paid. A notice by a tenant that he will pay no more rent does not vary the relations of the landlord and himself. He owes no duty and can violate none till the rent becomes due, and then if it is not paid he can be sued for it. The only breach of contract by the defendants was when the building was repaired and they were notified of the fact and a month's rent had fallen due and they had refused to pay it.

We have said that the plaintiff did not join with the defendants in rescinding the contract, and they of course had no power to do it without his assent. It is found that he accepted their conduct as a final breach of their covenants in the lease, and " accepted the premises, but did not intend thereby to in any way release the defendants from his claim against them for damages arising from said breach." If this is to be construed as a rescinding of the contract on his part, which of course the conduct of the defendants would have justified, it would have left nothing of the contract as a basis for a recovery of either rent or damages. Ordinarily the surrender of leased premises by the lessee and the acceptance of them by the lessor would constitute a mutual rescinding of the contract of lease, and it would cease to exist for every purpose. But it is manifest that nothing of the sort was intended by the plaintiff here. He accepted the possession of the premises, but did not intend thereby to relinquish his right to damages. But his right to damages would be gone if he accepted the possession as a rescinding of the lease on his part. We must therefore qualify his acceptance by his intent in making it. It is to be observed that the statute provides expressly that

the tenant, after such an injury to the tenement, may "quit possession." Of course when he does so the possession falls to the landlord. It is also necessary that he should have possession for the purpose of making repairs. And the statute does not make the liability of the tenant depend upon his reoccupying. It says—" if the same shall become fit for occupancy during the continuance of his lease, he shall then pay the rent and may again occupy." In any case of the abandonment of leased premises by a tenant, especially with a declaration that he will never occupy again, the landlord must have the right to take possession for the purpose of caring for the property and of leasing it to others, and is not to be prejudiced by doing so. The rescinding the contract is wholly a matter of intent on his part, and that intent will not be inferred from his merely taking possession, especially when it is found that he did so with no intent to relinquish his rights under the lease, even though he might conceive his right to be only to damages.

The suit is brought for the recovery of damages for the breach of their contract by the defendants, but we think the complaint, though drawn with reference only to a recovery of damages, yet contains all that is necessary under our Practice Act for the recovery of the rent that was due when it was brought. It states all the important facts of the case—the lease, the occupancy of the defendants under it, the injury to the building by fire, the removal of the defendants from it, its reparation by the plaintiff, the notice of it given the defendants, their refusal to occupy, and their continued neglect and refusal to pay the plaintiff anything further. It is true that the complaint demands a certain sum as "damages," but we think, under our present liberal practice, any sum due under any name upon the facts stated could be recovered. The plaintiff can therefore recover upon it whatever rent was due at the bringing of his action, unless his right of action is defeated by other facts in the case that are to be considered.

And we will say here in passing that, although the land-

lord's right to the renewed rent in a case like this is dependent upon the statute, yet it is not properly a statutory obligation that is created and which is to be declared on as such, but a contract obligation revived by the statute, and to be declared on as a contract obligation. It is very questionable whether it is necessary in the complaint to set out anything more than the contract, it being a matter of no importance, so long as the contract is in force, how it became so. If in the case of a ten years' lease there had been a month's interruption of occupancy and rent during the first year, and the lease had then been revived by the statute, it could not be necessary to set out this fact in every suit for rent during the whole ten years.

But the most serious question in the case is as to the legal renewal of the liability of the defendants for the rent, upon the special facts of the case. The statute provides for such a renewal of liability if the premises "shall become fit for occupancy during the continuance of the lease." But it is clear that the reparation must be made within a reasonable time. The landlord must not be negligent in the matter. He must not let his tenant suffer from any want of activity on his part. Here the court finds that the building was not repaired within a reasonable time—both that the repairs were not begun within a reasonable time, and that when begun they were not completed within a reasonable time.

And it is further found that a lease was made on the 1st of January to a third party for sixteen months of a portion of the space that had been occupied by the defendants and which of course they would have had a right to demand if they had returned to the occupancy of the premises after their reparation. It is clear that by this lease the plaintiff had put it out of his power to restore the possession of the premises to the defendants, and they of course were under no obligation to accept a part.

Here are two facts, either of which would in ordinary circumstances have barred the plaintiff of all right of recovery. But we think the defendants had placed themselves in a position where they could not avail themselves of either

of these facts. They had in the most emphatic manner declared to the plaintiff in writing, immediately after the fire, and this in reply to his notice that he should immediately repair, that they should not occupy the premises again. It is found that the plaintiff accepted their refusal to occupy again as a final one and as a breach of their contract. He had a right to take them at their word. Doing so, the question how rapidly he should push the work of reparation was one which they had no interest in. Indeed the longer he delayed the better it was for them, for it saved them from liability for rent during the period of delay. We think the finding of the court that the repairs were not made within a reasonable time has reference only to what would be a reasonable time in an ordinary case, where there was nothing to excuse the landlord from prompt action. It cannot therefore affect the case as it stands.

And under this notice from the defendants that they should not occupy again, the plaintiff had a right to make the lease which he did of a portion of the premises to a third party. The defendants cannot complain if he did the best he could with the property. It was directly for their interest, as they would have the benefit of whatever he might receive as rent. All the analogies of the law sustain this view.

It is to be noticed, as confirming the plaintiff's understanding of the defendants' letter of October 20th, as a full and final refusal to occupy the premises again, that in their letter of February 16th, in reply to his of the day before, they say—" We herein give you notice, *as we have done before*, that we shall not occupy," etc., making it clear that their final refusal to occupy again was not founded upon anything that had occurred since the fire, but was wholly a carrying out of the purpose first expressed and ever since held. It is found that the defendants did not know at this time of the written lease of a part of the premises on the 1st of January, 1885. We take this to mean that they had no knowledge that any lease had been made. If, however, it means that their ignorance was merely of the written

Miller *v.* Benton.

lease, and that they knew that the rooms had been leased, the case becomes the stronger against them, because, with knowledge of the lease, they did not refer to it as a reason for their refusal to occupy.

We think the plaintiff therefore entitled to recover whatever rent had accrued, and would have become due if the defendants had gone into occupancy, between the 14th day of February, 1885, and the last rent day before the 13th day of February, 1886, the day when the suit was brought, allowing in favor of the defendants whatever rent he had received from the premises from other parties.

There is error in the judgment appealed from and it is reversed.

In this opinion PARK, C. J., and PARDEE, J., concurred.

CARPENTER, J., (dissenting).   I am not satisfied that the notice given to the plaintiff by the defendants, that they would not again occupy the premises, ought to be regarded as a waiver of reasonable diligence.   Assuming that the court has rightly construed the statute, (on that point I say nothing,) I think the plaintiff ought to be held to a strict compliance with all its provisions.   One requirement, by implication, is that he shall restore the building in a reasonable time.   This, it is expressly found, he did not do. It is true that a man will not ordinarily be heard to complain of a delay that does him no harm.   But that is not the question.   The plaintiff is seeking to take advantage of a somewhat arbitrary statute, and one which has or may have a harsh operation.   The question is—is he in a condition to do so?   In order to do so must he not place himself wholly within its provisions?   Is an excuse for not complying with it sufficient?   Again.   The defendants immediately after the fire did all they could to surrender the premises, and the " plaintiff accepted the conduct and declarations of the defendants as a final breach of all the covenants in the lease on their part to be kept and performed, and accepted the premises, but did not intend thereby to in any way release the defendants from his claim against them

for damages arising from said breach." The plaintiff then waited two months before contracting for re-building; on the 1st of January, 1885, six weeks or more before the building was completed, he let one of the rooms, which was formerly occupied by the defendants, and which was not destroyed by the fire, to another party for sixteen months; and after the new building was substantially completed, he let the rooms from time to time as he saw fit. Now all this satisfies me that the plaintiff accepted the premises when surrendered to him and elected to treat the lease as at an end. If so I am unable to see how it could be kept in force for the purpose of recovering either rent under the statute or damages.

Moreover, he had put it out of his power to allow the defendants to occupy the premises as before. Suppose they had desired and proposed to resume possession on the 14th of February, 1885, and the plaintiff had refused, as he must have done under his contract with others; how would the parties have stood then? Will it be contended that the plaintiff could then have recovered rent under the statute? If it be said that they did not offer to re-occupy, my answer is that they were not bound to. A room which "was a material part of the premises occupied by the defendants," had been leased to others; the office had not been partitioned off; and the elevator was in no condition for use. So that the premises were not then in fact restored, and we cannot know that there has ever been a time when the defendants could have resumed the possession of the premises. An offer to resume would have been nugatory—not through the defendants' fault, but the plaintiff's. Must not the defendants then stand as they would have done if they had actually proposed to occupy the premises?

But aside from any offer to resume possession: the last clause of the statute is, "he shall then pay the rent, and may again occupy it." Before the plaintiff can avail himself of the statute he must put the property in such condition as that the defendants can occupy it. This seems too

clear to require argument; and this, it must be conceded, he has not done.

In this opinion, STODDARD, J., concurred.

NOTE. Occasional expressions in law treatises and opinions have left the question of the effect of the rescission of a contract in some doubt. The law dictionaries concur in defining a rescission as the "destruction, annulling, abrogating or making void of a contract." It would seem clear that a contract thus annulled and made void cannot be made the basis of a suit for its breach. The books all agree that where one party would otherwise have a right to rescind the contract, he cannot do so where the parties would not by the rescission be left *in statu quo*. But this is no objection to a rescission by both parties. There is no limitation to their joint power to deal with their own contract. But where a contract is thus rescinded, and the parties are not left *in statu quo*, the necessary right of action to recover that condition accrues to one or both the parties ; and it is believed that the demands of the *status quo* are the precise measure of the rights of action that accrue upon the rescission of a contract.

Thus, one party contracts to buy and the other to sell a piece of land; the land is conveyed to the purchaser, but before he has paid for it the parties rescind the contract. Here the purchaser has the title to a piece of land to which he has no right; the other party can sue for and recover it. A man is paid in advance for a horse that he is to deliver; before the delivery the parties rescind the contract; here the proposed vendor has the price of the horse in his hands, but has no right to keep it. The other party can sue for money held to his use. There may be a right of action on both sides. The party who was to buy the land in the case supposed may have paid in part for it. Here, on the rescinding of the contract, the original owner of the land can recover it in a proper action, and the other party can recover the money he has paid.

The rescinding of the contract does not, however, leave the case as if it never existed. It explains, gives character to, and sanctions whatever was done under it while the contract was in force. Thus the possession of land under a contract of purchase afterwards rescinded, retains the character that it had under the contract, and does not become a tenancy, though the original right of the owner revives and he can recover the possession in an action at law. This point is involved in the reasoning of the court in *Vandenheuvel* v. *Storrs*, 3 Conn., 208, although that was not a case of a rescinded contract.

It is laid down in the books without qualification that a contract cannot be rescinded in part, but must be rescinded if at all in whole. Bouvier's Law Dict., *Rescission*. One reason may be that the annulling of a part of the contract would be rather an alteration than a rescinding of it. But there would seem to be no good reason why a contract may not be rescinded as to everything executory under it, and left good so far as it has been executed on both sides. Thus a policy of life insurance for a term of years may have run for a part of the term, the premiums have been regularly paid and the assured have had full insurance for the time, and at last, under a claimed

act of forfeiture, the insurance company may refuse to keep it in force, and the assured may join with them in rescinding the contract. Here there would seem to be no good reason why the assured should recover the premiums he has paid, having had their equivalent in a valid insurance. The case would of course be different if the insurance were for the entire term of life, as here the premiums would be greater, and the excess would have gone to pay for the final payment of the policy, certain in this case and contingent in the other. The latter is essentially the case of *Day v. Conn. General Life Ins. Co.,* 45 Conn., 480. Under the charge of the court below the jury returned a verdict for the assured for the full amount of the premiums he had paid. The Supreme Court reversed the judgment, holding that the action, based on an implied agreement of the insurance company to accept the premiums and keep alive the policy, could not be sustained, and it was not necessary for it to decide whether all the premiums could have been recovered back if the contract had been rescinded. It would seem as if, upon a mutual rescission of such a policy, the insurance company would have had as good a right to recover for the valid insurance they had furnished the plaintiff, as he would have to recover the money he had paid the company for the insurance. As the two sums would not balance, a part of the premium being for the future payment of the policy, there was no part fully executed by the parties which could be separated from the executory part, making a whole rescission necessary, if any; but this would have left the insurance company a right to recover for the insurance it had furnished, what it was fairly worth, either by a direct action or by a set-off against the suit of the insured to recover back the premiums paid. The correct principle would seem to be that the mutually executed part of a contract might stand, while the executory part could be rescinded, if they could be separated.

The rescission of a contract is spoken of in some of the books as a conclusion of law from acts of the party having the right to join in a rescission, even where he did not intend to rescind. But it is believed that the better, and most generally sustained rule is, that it is essentially a question of intention. There would seem to be no good reason why, when the intention of the parties is the great thing sought after in construing a contract, the real intention should not be the vital thing in construing acts that may be evidence of a rescission. Thus, an abandonment of a tenement by a lessee, with a declaration that he should never return, and possession taken by the lessor, has been given as an illustration of acts by the lessee which the law will construe as a rescinding of the contract by him. But such taking possession may have been an absolute necessity on the part of the lessor. His insurance policy would in most cases require the tenement, if a dwelling house, to be occupied. Such possession might be necessary for its care and protection. Its occupancy by a new tenant might be the lessor's only practicable mode of protecting the property, and as all rent received would so far reduce the indebtedness of the original lessee, it would seem clear that such a reasonable and practically necessary course should not be construed as carrying with it an intention to rescind the lease. In the principal case the statute provides expressly that lessees, in case of an injured building, " may quit possession," and that after the building has been restored they "shall

Miller *v.* Benton.

then pay the rent and may again occupy." The defendants then did the plaintiff in that case no wrong in quitting possession, and after he had made the repairs their obligation under the statute was to *pay rent*. Their neglect to occupy could not affect this obligation. On their quitting possession, the possession necessarily reverted to the plaintiff, and remained in him necessarily until they returned and resumed occupation. It is difficult to see how this taking or holding possession on his part could be construed as a rescission of the contract independently of his intention. The correct principle must be that the intention of a party must be the principal factor in construing his acts in such a case.

The authorities seem to be ample that where a party refuses absolutely to perform a contract, the other party, without rescinding the contract, may take such a course as will preclude performance by the first party. Thus, a man contracts to render service as a servant for a year, and the master agrees to pay him a certain sum per month. The latter, before the year begins notifies the former that he shall not employ him, or after the year has begun dismisses him. Here the servant may hire himself to another person; indeed it is held in all the cases that he is bound to seek employment; and yet he is placing it out of his power to return to the first master's service if the latter should change his mind and call for him. So I may contract with a builder to erect a house for me on my lot. He fails to begin the work and notifies me that he shall not do it. It may be a matter of the utmost importance to me that the house be built at once, and I am justified in making a contract with another builder to erect it. But by so doing I place it out of my power to allow the first builder to do the work if he should change his mind and offer to do it. The court applies that general rule to the case of premises leased and abandoned by the lessee. The lessor is not bound to rescind the lease, but may do the best he can with the property, both for its protection and to reduce the liability of the lessee.

There is a certain attitude in which a party may stand toward a contract and toward the other party that is entirely distinguishable from a rescission and yet so much like it as to have been sometimes mistaken for it. A builder who has contracted to erect a house for me, before the time for beginning on the work absolutely refuses to go on and perform the contract. I immediately contract with another builder to do the work. This I am justified in doing, not because the contract has been rescinded, for it has not been; but because I have a right to regard it as certain that the first builder will not perform his contract. This has sometimes been called an abandonment of the contract; but it is difficult to see the difference between an abandonment of a contract by both parties and a rescission by both. It is, and this is all that it is, an abandonment of all expectation on my part that the contract will be fulfilled. When the point is reached where, by reason of the refusal of the other party to perform, I have just ground for this abandonment of expectation, that is, for a certainty in my own mind that the contract will not be performed, I have a right to do the best I can for myself and my property, without in any degree relinquishing my rights under the contract. If this view be correct, as it seems clearly to be, it goes to show that the question whether a party has rescinded a contract is more a question of intent than of mere outward act.

The writer has undertaken merely to state what he believes to be certain general principles relating to the rescinding of contracts, and it does not fall within the purpose of this note to cite and comment on the very numerous and not entirely harmonious authorities on the subject. *R.*