[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Before the court is an application for a prejudgment remedy based on alleged breaches of a lease agreement, a guaranty and a promissory note.
The plaintiffs are North Haven Crossing Limited Partnership (the plaintiff) and its management agent CBL Associates Management, Inc. (CBL) also known as CBL Management, Inc. On March 18, 1993, the parties entered into a lease agreement under which the defendant C C Incorporated (C C) agreed to lease the plaintiff's commercial property in a strip shopping center for a term of ten years. According to the lease, C C agreed to pay $4,700.00 per month for the first five years. That amount included base rent, common area maintenance charges, taxes and insurance. The defendants Joseph Christina and Benjamin Campagnuolo guaranteed the payment of rent under the lease. The defendant Joseph Christina and the defendant Andrew Panzo also signed a promissory note in favor of CBL in the principal amount of $11,427.54 to be paid in twelve monthly installments of $952.30 commencing May 1, 1996.
In September 1996, the defendant Joseph Christina advised CBL that C C was having financial problems and would be vacating the leased premises. On October 25, 1996, C C did vacate the premises. Christina changed the locks to the doors and, in CT Page 8463 accordance with instructions given him in a telephone conversation with Andrew Brauer, a representative of CBL in Waltham, Massachusetts, left the keys to the new lock with "Litterbug," the entity responsible for maintenance of the shopping center. Christina also put a sign in the window of the leasehold premises stating that the premises were available to be leased.
Shortly thereafter, Brauer undertook to re-rent the space. He put a more permanent sign on the outer wall of the leasehold premises which indicated that the premises were available to be leased, the name of the party to contact (CBL), and its telephone number. He also had the pylon sign to the shopping center altered to reflect that space was available to be leased. He discussed the need to re-let the premises with Christina. In November and December of 1996, Brauer also discussed re-letting the space with two acquaintances of Christina who were realtors, R. Eugene Torrenti and Vincent Farricelli, respectively. In December 1996, Brauer sent materials to Farricelli that he said would be helpful in marketing the space. In addition, Brauer went to shopping center trade shows in New York City and Boston, in December 1996 and July 1997, respectively, where he claims to have marketed the property.[1] of certain businesses as to whether they wished to relocate to the plaintiff's shopping center.
An anticipated lease with a telephone communications store failed to come to fruition because of differences between the store's partners. Between April 15, 1997 and July 31, 1997, CBL did temporarily lease the space to BJ's Wholesale Club for $7,000.00.
"General Statutes § 52-278d(a) provides that a trial court may issue a PJR if it determines that there is `probable cause to sustain the validity of [the plaintiff's] claim.' It is firmly established that the trial court's hearing in probable cause is not intended to be a full scale trial on the merits of the plaintiff's claim. `The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . .' (Internal quotation marks omitted.) Calfeev. Usman, 224 Conn. 29, 37, 616 A.2d 250 (1992). Probable cause for purposes of the PJR statutes is a flexible common sense standard that does not demand that a belief be correct or more likely true than false. Goodwin v. Pratt, 10 Conn. App. 618, CT Page 8464 621, 524 A.2d 1168 (1987)." Fischel v. TKPK, Ltd.,34 Conn. App. 22, 24, 640 A.2d 125 (1994). "`In acting on a prejudgment remedy motion, the trial court must evaluate the arguments and evidence produced by both parties to determine whether there is probable cause to sustain the validity of the plaintiffs' claim. . . . [T]he trial court, vested with broad discretion, need determine only the likely success of the plaintiffs' claim by weighing probabilities.' (Citations omitted; internal quotation marks omitted.) Haxhi v. Moss, 25 Conn. App. 16,18-19, 591 A.2d 1275 (1991); E.J. Hansen Elevator, Inc. v. Stoll,167 Conn. 623, 628-30, 356 A.2d 893 (1975). Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action. One Fawcett Place Ltd.Partnership v. Diamandis Communications, Inc.,24 Conn. App. 524, 525, 589 A.2d 892 (1991)." Tyler v. Schnabel,34 Conn. App. 216, 219-20, 641 A.2d 388 (1994).
There is no dispute that C C breached the lease. The issue is what damages, if any, are owing. "When the lessee breaches a lease for commercial property, the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender.Sagamore Corporation v. Willcutt, 120 Conn. 315, 317-18,180 A. 464 (1935); Dewart Building Partnership v. Union Trust Co.,4 Conn. App. 683, 687, 496 A.2d 241 (1985). Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. DewartBuilding Partnership v. Union Trust Co., supra. When the landlord elects to terminate the tenancy, however, the action is one for breach of contract; Sagamore Corporation v. Willcutt, supra; and, when the tenancy is terminated, the landlord is obliged to mitigate his damages. Dewart Building Partnership v.Union Trust Co., supra." Rokalor Inc. v. Connecticut EatingEnterprises, Inc., 18 Conn. App. 384, 388, 558 A.2d 265 (1989).
 I
Preliminarily, the court takes this occasion to question the soundness of the doctrine that where a tenant abandons a lease and seeks to surrender the leasehold premises that the landlord may refuse to accept the surrender and sue to recover the rent due under the terms of the lease. "The reasons offered for this rule are that the landlord has expressed a personal choice in CT Page 8465 selecting the tenant, and is not required to accept a substitute; that a lease is a conveyance binding the tenant to the landlord by privity of estate until the estate is terminated; that the privilege to reenter upon the tenant's abandonment is an option of the landlord and not a duty; and that the tenant cannot by unilateral action force upon the landlord a surrender of the lease term." 2 R. Powell, The Law of Real Property (1991 Rev.) ¶ 249[1], p. 17-60, citing Gruman v. Investors DiversifiedServices Inc., 247 Minn. 502, 78 N.W.2d 377, 380 (1956).
First, this rule, borne in antiquity, ignores the new universal principle that cuts a wide swath across the whole body of the law that a party seeking recovery must use reasonable care to mitigate his damages. See, e.g., Hallas v. Boehmke Dobosz,Inc., 239 Conn. 658, 668-69, 686 A.2d 491 (1997) (tort, negligence in failing to obtain insurance); Preston v. Keith,217 Conn. 12, 15-16, 584 A.2d 439 (1991) (action in negligence for personal injuries); Skrzypiec v. Noonan, 228 Conn. 1, 17,633 A.2d 716 (1993) (tort, breach of confidential and privileged communications); Lynch v. Granby Holdings, Inc.,37 Conn. App. 846, 850, 658 A.2d 592 (1995), appeal dismissed, 235 Conn. 941, 669 A.2d 578 (1996) (breach of contract, specifically, a lease); Keans v. Bocciarelli,35 Conn. App. 239, 243, 645 A.2d 1029 (1994) (action in negligence for dental malpractice). "In Morrov. Brockett, [109 Conn. 87, 145 A. 659 (1929), the Supreme Court] discussed the relationship between mitigation of damages and proximate cause. `The burden is on the plaintiff to establish that the injuries for which he seeks damages were the proximate result of the negligence of the defendant, but when a prima facie case had been made out, as in this instance, it becomes incumbent upon the defendant if he seeks to exonerate himself from responsibility for a portion of the consequences to show that some of these had their proximate cause in the failure of the plaintiff to act in good faith in an attempt to promote recovery and avoid aggravation of the initial injury.' Id., 93-94.Morro established that the theoretical foundation for the plaintiff's duty to mitigate damages is that the defendant's negligence is not the proximate, or legal, cause of any damages that could have been avoided had the plaintiff taken reasonable steps to promote recovery and avoid aggravating the original injury." Preston v. Keith, supra, 217 Conn. 16.[2] The argument that the landlord ought not be obliged to attempt to re-rent the commercial space because the landlord has expressed a personal choice in selecting the tenant ignores that the CT Page 8466 landlord's need to be appropriately selective in its choice of a tenant may be incorporated into the application of the standard of reasonableness in attempting to mitigate damages, and that it is the tenant's burden to prove that the landlord's efforts at mitigation were not reasonable. Id., 20-22.
Second, the rule that a landlord may refuse to collect a surrender under a long-term lease and sue to collect rent ignores the reality that a lease is no longer regarded as a conveyance of an interest in property. Compare In re Edgewood Park JuniorCollege, Inc., 123 Conn. 74, 77, 192 A. 561 (1937) ("A lease is primarily a conveyance of an interest in land."). Rather, the last fifty years have seen an evolution toward the reality that a lease is a contract, governed by contract principles. SeeDornfeld v. Hom, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. SPH 9101-58760 HD (4 Conn. L. Rptr. 44) (April 2, 1991, Berger, J.); see also discussions in Javins v. First National Realty Corp. ,428 F.2d 1071, 1074-75 (D.C. Cir. 1970); Ringwood Associates, Ltd. v.Jack's of Route 23, Inc., 398 A.2d 1315, 1319-20, 166 N.J. Super. 36
(1979). Indeed, in Rokalor, Inc. v. Connecticut EatingEnterprises, Inc. supra, 18 Conn. App. 389, the court recognized that a lease is a contract and that for its breach, the measure for contract damages applied.
Third, the common law rule that a landlord may refuse to collect a surrender under a long-term lease and sue to collect rent without using reasonable efforts to mitigate his damages results in, and indeed encourages, economic waste. There is a "judicial policy of avoiding unnecessary economic waste."American Bank of Connecticut v. Eagle Construction Co.,10 Conn. App. 251, 255, 522 A.2d 835 (1987). "The policy against unreasonable economic waste is important. It is reflected in the common law measure of damages for breach of contract; KevinRoche-John Dinkeloo Associates v. New Haven, 205 Conn. 741,749, 535 A.2d 1287 (1988); Johnson v. Healy, 176 Conn. 97, 105,405 A.2d 54 (1978); Levesque v. D M Builders, Inc.,170 Conn. 177, 180-181, 365 A.2d 1216 (1976); and has been employed to ascertain the presumed legislative intent behind the enactment of a statute. Dubkowski v. Administrator, 150 Conn. 278, 283,188 A.2d 658 (1963)." Pace Construction Co. v. Cascella SonConstruction Co., Superior Court, judicial district of Fairfield, Docket No. CV 94 0317925S (13 Conn. L. Rptr. 33) (Nov. 25, 1994). Why should the law allow and encourage a landlord to leave his presumably valuable commercial space fallow? Why should CT Page 8467 a tenant, oftentimes already in financial distress, pay for a loss to the landlord that he could avoid?
Some jurisdictions have abandoned the common law rule. See 3 H. Tiffany, The Law of Real Property (3d Ed. 1939) § 902, pp. 560-61 n. 14. However, the defendants have not sought to brief this issue. Indeed, they did not seek to submit any brief at all. Moreover, the common law rule that where a tenant breaches a lease, the landlord may refuse to accept a surrender and sue for rent has not only been recently recognized in K R RealtyAssociates v. Gagnon, 33 Conn. App. 815, 819, 639 A.2d 524
(1994), and Rokalor, Inc. v. Connecticut Eating Enterprises,Inc., supra, 18 Conn. App. 388, but has been applied in DewartBuilding Partnership v. Union Trust Co., 4 Conn. App. 683, 687,496 A.2d 241 (1985). Under such circumstances, this court is duty-bound to follow the existing common law precedent; Jolly,Inc. v. Zoning Board of Appeals, 237 Conn. 184, 195,676 A.2d 831 (1996); although it may, as it has, critique it. Id., n. 15.
 II
The plaintiffs do not dispute that by vacating the leasehold premises, placing a sign in the window that the premises were available to be leased, and giving its only keys to "Litterbug" as directed by Brauer, C C surrendered the premises. See In reEight Cooper Equities v. Abrams, 539 N.Y.S.2d 671, 675-76,143 Misc.2d 52, 54-55 (1989); Estate of Fishel v. Baronelli,463 N.Y.S.2d 1009, 1010, 119 Misc.2d 625, 627 (1983). Moreover, the court is persuaded from the totality of the evidence, including Joseph Christina's statements to Brauer, that C C intended to and did surrender the leased premises. See Sagamore Corp. v.Willcutt, 120 Conn. 315, 320, 180 A. 464 (1935). However, CBL claims that neither it nor the plaintiff accepted that surrender, thereby terminating the tenancy.
"The burden of proving acceptance of surrender is upon the lessee." Holmes v. Freeman, 23 Conn. Sup. 504, 506, 1 Conn. Cir. 336, 338, 185 A.2d 88 (App.Div. 1962). By the weight of authority, the landlord's acceptance of keys, alone, is not a sufficient manifestation of intent to accept the surrender and terminate the lease. Schnee v. Jonas Equities, Inc.,109 Misc.2d 221, 222-23, 442 N.Y.S.2d 342, 343 (1981); Ryals v.Laney, 338 So.2d 413, 415 (Ala.Civ.App. 1976); Cantor v. VanNoorden Co., 4 Mass. App. Div. 819, 349 N.E.2d 375, 377 (1976);Mariani Air Products Co. v. Gill's Tire Market, 29 Utah 2d 291, CT Page 8468508 P.2d 808, 810 (1973); Coffin v. Fowler, 483 P.2d 693, 695
(Alaska 1971). "In some States, a reletting terminates the lease as a matter of law. A second line of authorities holds that this result follows unless there is notice to the tenant of the landlord's refusal to accept the surrender and of his intention to relet. The third school does not set up any arbitrary standard but holds the question of acceptance to be one of intention and a question of fact.
"Connecticut adheres to the third school. . . ." McGrath v.Shalett, 114 Conn. 622, 625, 159 A. 633 (1932); see also Millerv. Benton, 55 Conn. 529, 544-46, 13 A. 678 (1887). As affirmed in McGrath and Miller, that the landlord has re-entered the premises and even re-rented them is not dispositive. The question of acceptance is one of intention.
Having heard the testimony and examined the exhibits, including § 11.2 of the lease,[3] I cannot find that the plaintiffs accepted C C's surrender.[4]
The court finds that there is probable cause that a judgment will be rendered in favor of the plaintiff. The amount of unpaid rent to date is $51,799.00. There also are late fees owing in the amount of $550.00. However, the defendants are entitled to a credit for the monies paid by the interim tenant, BJ's Wholesale Club, in the amount of $7,066.67; Boardman Realty Co. v.Carlin, 82 Conn. 413, 416, 74 A. 682 (1909); Miller v. Benton, supra, 55 Conn. 549; as well as for the security deposit of $4,100.00. For the same reason that the plaintiff is under no obligation to mitigate its damages, the plaintiff is not entitled to damages for the nonpayment of future rent. The rule that mitigation is unnecessary is based on the theory that a lease is a conveyance of an estate. Sagamore Corp. v. Willcutt, supra,120 Conn. 319. Although the tenant has surrendered the premises, the plaintiffs have not accepted the surrender, and the lease has not been terminated. Therefore, rent continues to be due under the terms of the lease — each month, as provided in § 2.1 of the lease. See In re Edgewood Park Junior College, Inc., supra, 123 Conn. 78-79; Sagamore Corp. v. Willcutt, supra,120 Conn. 318; cf. Berner v. Manning, 7 Conn. Sup. 247, 248 (1939).
The application for a prejudgment remedy is granted in favor of the plaintiff against the defendant C C on the first count of the complaint in the amount of $42,000.00. The application for a prejudgment remedy is granted in favor of CBL against the CT Page 8469 defendants Joseph Christina and Andrew Panzo on the second count of the complaint, on the promissory note, in the amount of $7,000.00. The application for a prejudgment remedy is granted in favor of the plaintiff and against the defendants Joseph Christina and Benjamin Campagnuolo on the third count of the complaint, based on the guaranty, in the amount of $42,000.00.
The plaintiffs shall prepare appropriate orders as to each defendant.
BY THE COURT
Bruce L. LevinJudge of the Superior Court