## In re SAXTON FURNACE CO.

### (District Court, E. D. Pennsylvania. December 15, 1905.)

#### No. 1,837.

1. BANKRUPTCY—CLAIMS—DAMAGES—BREACH OF CONTRACT OF SALE—PROFITS.
    Where a bankrupt became insolvent and repudiated a contract which it had entered into for the purchase of machinery, the seller was entitled to prove its claim against the bankrupt estate for the profit which it would have made on the sale, where the same could be shown with reasonable certainty.

2. SAME—TENDER OF PERFORMANCE—WAIVER.
    In making the contract claimant acted for a manufacturing company which was to build the machinery, claimant becoming responsible to it for the price and receiving a commission on the order, which facts were known to the bankrupt. On repudiation of the contract the manufacturing company made a claim for its damages on the claimant, which paid the same. Held that, if tender of performance was required of such company under the circumstances, it was waived by claimant, and the latter was entitled to prove its claim for the amount of its commissions, and also for the profit which it was shown would have been made by the manufacturing company.

In Bankruptcy. On certificate from referee concerning claim of Westinghouse, Church, Kerr & Co.

R. W. Archbald, Jr., and Francis Shunk Brown, for Westinghouse, Church, Kerr & Co.

D. Stuart Robinson, for trustee.

J. B. McPHERSON, District Judge. The facts upon which this controversy arises are thus stated by the referee:

"(1) On August 4, 1902, Westinghouse, Church, Kerr & Co. entered into a written contract with the Saxton Furnace Company, the bankrupt, which contract is attached as Exhibit A to the petition, by which contract Westinghouse, Church, Kerr & Co. agree to construct and erect two blowing engines for the Saxton Furnace Company, and the Saxton Furnace Company agree to pay therefor $42,600.

"(2) This contract was executed on behalf of the Saxton Furnace Company by Charles H. Scott, its president, who knew at the time of its execution that the actual work of construction would be done by the Westinghouse Machine Company.

"(3) Westinghouse, Church, Kerr & Co. was a corporation engaged, at the time of the making of this contract, as selling agents for the Westinghouse Machine Company, among other things, and the actual work of designing and construction of machinery was not done by them, but by the Westinghouse Machine Company.

"(4) August 19, 1902, Westinghouse, Church, Kerr & Co. ordered from the Westinghouse Machine Company the designing and construction of the two blowing engines described in the contract with the Saxton Furnace Company, and the Westinghouse Machine Company thereupon undertook to build the same for the sum of $38,190 for delivery f. o. b. cars at East Pittsburg, and proceeded with the work of designing by preparing drawings and patterns.

"(5) By a general agreement between Westinghouse, Church, Kerr & Co. and Westinghouse Machine Company, Westinghouse, Church, Kerr & Co. receive a commission of 5 per cent. of the selling price of machinery as their commission as selling agents, and Westinghouse, Church, Kerr & Co. assume the financial risk in all contracts.

"(6) On December 5, 1903, Charles H. Scott, president of the Saxton Furnace Company, sent the following letter to Westinghouse Machine Company:

" 'Phila., Dec. 5th, 1903.

" 'Westinghouse Machine Co., 10 Bridge St., New York, N. Y.—Gentlemen: Your favor of Nov. 4th was duly received, but was not replied to, because I had hoped to see you in New York.

" 'It is impossible for us to fix a new date for the shipment of the engines referred to, and as they have not been made yet, I hope it will be no inconvenience to you to allow us to retire from this contract altogether. The fact is, we could not pay for them if we took them. Our finances are in bad shape and for this reason we can't do anything except not take forward what we are unable to pay for.

" 'Yours truly, Charles H. Scott, President, per W. F. F.'

"(7) On December 14, 1903. Charles H. Scott, as receiver, sent the following letter to Westinghouse Machine Company:

" 'Phila., Dec. 14, 1903.

" 'Westinghouse Machine Company, 10 Bridge Street, New York, N. Y.— Gentlemen: Mr. Lauder and myself have been appointed by the court of common pleas of Bedford county, receivers of the Saxton Furnace Company, and as such receivers we beg leave to notify you that we will not be able to carry out the contract of the Saxton Furnace Company with you for two blowing engines.

" 'Yours truly, Charles H. Scott, Receiver.'

"(8) The Saxton Furnace Company was adjudged a bankrupt March 10, 1904.

"(9) Westinghouse, Church, Kerr & Co. and Westinghouse Machine Company were at all times ready and willing to perform their agreement under this contract.

"(10) The cost to Westinghouse Machine Company of performing its contract with Westinghouse, Church, Kerr & Co. for the designing and construction of these engines, if the performance of the contract had been proceeded with, would have been $31,902.92.

"(11) The profit of Westinghouse, Church, Kerr & Co., if the contract had been completed would have been $2,010.

"(12) The profit of the Westinghouse Machine Company, if said contract had been completed, would have been $6,287.08."

It further appears that the machine company made a claim for damages against Westinghouse, Church, Kerr & Co., amounting to more than $11,000, and that the latter corporation, recognizing the claim as proper, has paid it in full. By this action—acceptance of the claim and payment—the referee was of opinion that a tender of performance by the machine company had been waived by Westinghouse, Church, Kerr & Co., and he liquidated the claim of the latter against the bankrupt estate at the sum of $8,297.08, being the amount of the claimant's commission on the sale and the sum paid to the machine company as damages for the breach of the contract. There is no dispute about the rule which should be applied in measuring the plaintiff's damages. It is thus stated in United States v. Behan, 110 U. S. 344, 4 Sup. Ct. 83, 28 L. Ed. 168:

"The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely: First, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson in the case of Masterton v. Mayor of Brooklyn, 7 Hill, 69, 42 Am. Dec. 38, they are 'the direct and immediate fruits of the contract,' they are free from this objection. They are then 'part and parcel of the contract itself, entering into and constituting a portion of its very elements—something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation.' Still, in order to furnish a ground of recovery in damages, they must be proved. If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to recover in all cases, unless the other party, who has voluntarily stopped the performance of the contract, can show the contrary."

In Howard v. Stillwell Mfg. Co., 139 U. S. 206, 11 Sup. Ct. 503, 35 L. Ed. 147, after stating the general rule that anticipated profits are to be excluded in estimating damages, the court goes on to say:

"But it is equally well settled that the profits which would have been realized, had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the

time it was entered into. United States v. Behan, 110 U. S. 338, 345–347, 4 Sup. Ct. 81, 28 L. Ed. 168; Western Union Tel. Co. v. Hall, 124 U. S. 444, 454, 456, 8 Sup. Ct. 577, 31 L. Ed. 479; Phila., Wilmington & Baltimore R. R. Co. v. Howard, 13 How. 307, 14 L. Ed. 157."

In the present case the trustee admits that the claimant is entitled to an award for the commission that would have been earned if the contract had been carried out, but objects to an allowance for the damage suffered by the machine company upon the ground that no tender of performance was made by that company to the claimant, nor was such tender ever waived. In view of the uncontradicted testimony, I do not think this position can be maintained. Without discussing everything contained in the referee's report upon this subject, it is enough to say that I agree with his conclusion that the acceptance and payment by the claimant of the machine company's bill for damages was an unmistakable waiver of such right as may have existed to have performance tendered. A tender would have been the merest formality. All parties were fully acquainted with the repudiation of the contract by the bankrupt, and with its subsequent insolvency; the ability of the machine company to build and deliver the engines was unquestioned; and the relations between that company and the claimant were so close that it is impossible to think of them as dealing at arm's length. It was certainly not in the minds, either of the claimant or the machine company, that a tender should be required, or made; but, if it was technically necessary, I think it was clearly waived by the payment of the bill for damages.

The order of the referee is affirmed.