In re SPITTLER.

(District Court, D. Connecticut. March 7, 1907.)

No. 1,422.

BANKRUPTCY—PROVABLE DEBTS—DAMAGES FOR BREACH OF EXECUTORY CONTRACT.

Where a bankrupt shortly prior to his bankruptcy gave notice to the other party to an executory contract that he would be unable to perform on his part because of his financial condition, such other party may treat the contract as broken, although the time for performance has not arrived and prove his claim for damages for the breach against the estate in bankruptcy under Bankr. Act July 1, 1898, § 63a (4), c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], where it is of such nature that it may be liquidated under subdivision "b" of said section.

In Bankruptcy. On certificate from referee in re claim against bankrupt.

Edward H. Rogers, for trustee.
L. J. Nickerson, for claimants.

PLATT, District Judge. On March 15, 1904, claimants A. W. North and the Kellogg & Wakefield Manufacturing Company made an agreement with the Vulcan Manufacturing Company (of which the bankrupt was president and owner of nearly all the stock) to sell the

capital stock and manufacturing plant of the Kellogg & Wakefield Company, which was controlled by North, for $40,000, of which $1,000 was paid down, and the balance was to be paid on or before December 1, 1905. It was further agreed that payments upon the purchase price might be made from time to time prior to December 1, 1905, at the vendees' option. It was also agreed that a lease of said premises should be on that day made and executed to said vendees for two years from and after December 1, 1903, which was the time when the bankrupt and the Vulcan Manufacturing Company actually took possession, and the agreement was verbally made, although, as recited, the agreement was not reduced to writing until March 15, 1904. Under said lease the rental was fixed at 10 per cent. of the unpaid portion of the purchase price, whatever from time to time that might be, payable quarterly, on the first days of March, June, September, and December.

The actual value of the property so taken into possession was $40,-000. Its actual value at the time of adjudication was $33,000. On February 18, 1905, the property was delivered into the possession of the claimants, and the trustee has not elected to assume the rights of the bankrupt under said agreement of sale or lease. In September, 1904, said Vulcan Manufacturing Company became financially embarrassed, and Mr. Spittler was appointed receiver by the state court. In December, 1904, Mr. Munn, as attorney for the claimants, made a demand upon said Spittler, now the bankrupt, but then the receiver, that he perform the terms of the lease and carry out the agreement upon which the present claim is predicated. Spittler thereupon informed Mr. Munn that it was absolutely impossible to pay the rent or to carry out the agreement because of his financial condition. The claim is founded upon said agreement and is for $6,000, which is found to be the depreciation in value of said property between the time when bankrupt and the Vulcan Manufacturing Company took possession thereof and the date of adjudication. The only question is whether in such circumstances the claim is provable in bankruptcy under Act July 1, 1898, c. 541, 30 St. 563 [U. S. Comp. St. 1901, p. 3447] section 63a (4). The amount is clearly enough established as provided for in section 63b, if the facts warrant the proof of the claim. The contract upon which this claim is based is executory, and the obligation to pay the remaining $39,000 thereunder did not become binding by its terms until December 1, 1905. The adjudication was nearly a year before that date. Upon the facts in this case, it is not necessary to decide broadly whether or not an adjudication in and of itself works a breach of an executory contract. I am willing to say, however, that if such a case presented itself, I think, from such examination of the law as I have made, that it would, as I am at present advised, be my duty to answer the question in the affirmative.

In this matter, however, there are other elements to be reckoned with. Prior to the bankruptcy proceedings, the vendee corporation, being financially embarrassed, had gone into the hands of a receiver under the jurisdiction of the state courts. Upon demand, Mr. Spittler, both as receiver and as the individual who dominated and controlled the corporation, had frankly confessed that the financial situation utterly prevented the carrying out the contract. On behalf of himself and

his corporation, he stated, in no uncertain terms, the fact that the existing situation precluded and eliminated any possibility of performing the contract on their part. The referee allowed the claim with much hesitation. The doubts which assailed him do not trouble me. He thinks that the decided cases rather carry the idea that the refusal to perform, or the inability to perform, must be a wrongful refusal, or an inability growing out of a disposition to commit a wrongful act. I do not so read the cases. An absolute inability to perform, which is of such a nature that there is no reasonable probability that thereafter a situation will arise which will make performance possible, is enough. If to such inability is added a statement that it exists, then the party so informed is in a position to treat the contract as broken and to pursue his remedy.

Immediately after the demand made by claimants through their attorney in December, 1904, and the reply made by Mr. Spittler on behalf of himself and his corporation, it was competent for the claimants to treat the contract as broken, and bring suit in the state courts for damages resulting therefrom. Counsel for trustee concedes that if such is the law, the claim is provable under section 63a (4). The adjudication was some weeks later; to be precise, on January 25, 1905. Bankruptcy simply established in concrete form the truth of the answer made by Mr. Spittler in December. It is not made the basis of the right to prove the claim, because it is not necessary to take that position, but, as already intimated, the court would be inclined to so rule if occasion demanded it. The court cannot discover the reason which forces any distinction between a refusal to comply, with no legal excuse therefor, and a refusal to comply, because absolutely unable to act otherwise. In both cases the other party may be damaged, and if obliged to wait until pay day, the hour for advantageous action may have gone, never to return. The case at bar happens to be an illustration of the evil which may come, if the trustee's view of the law is the true one.

Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, established the general principle which governs the case at bar. The question decided then and governing here is plainly set forth in the opinion on page 7 of 178 U. S., page 783 of 20 Sup. Ct. (44 L. Ed. 953):

"But the other three contracts involve the question whether, when the contract is renounced before performance is due, and the renunciation goes to the whole contract, and is absolute and unequivocal, the injured party may treat the breach as complete and bring his action at once."

So far as Daniels v. Newton, 114 Mass. 530, 19 Am. Rep. 384, may be said to conflict therewith, its reasoning is distinctly repudiated in the latter part of the opinion. No case decided since Roehm v. Horst will, upon strict analysis, be found to depart from the broad proposition therein determined, as shown by the quotation above recited, and upon that authority alone, it would be my duty to sustain the referee.

His order is therefore affirmed.