### In re NATIONAL WIRE CORP.

(District Court, D. Connecticut. January 8, 1909.)

No. 1,814.

**1. SALES (§ 163*)—CONTRACT—COMPLETION—SUBSEQUENT MODIFICATION.**
    Where an order for wire had been given in accordance with a contract of sale, a mere intimation in the order that there was a possibility that at a later date a change in sizes might be seasonably suggested in accord-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ance with the custom of the trade was not a breach of the contract by the buyer.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 163.*]

2. BANKRUPTCY (§ 318*)—BREACH OF CONTRACT—DAMAGES.

Where a bankrupt, prior to the appointment of receivers, had put claimant to considerable trouble concerning a contract for the sale of wire, and the receivers and the bankruptcy adjudication accomplished a complete breach of the contract, claimant was entitled to the allowance of an award of damages therefor in the bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 479; Dec. Dig. § 318.*]

3. BANKRUPTCY (§ 318*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.

After bankrupt's breach of a contract for the sale of wire, claimant diverted to some extent wire ordered in advance from another company for other uses from its original destination in order to protect the worst places of claimant's business caused by the breach. Held, that claimant was not thereby required to accept the price paid for such wire as a basis of its damages for breach of the bankrupt's contract.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 479; Dec. Dig. § 318.*]

In Bankruptcy.

The following is the certificate of the referee as to the claim of the Clark Bros. Bolt Company.

I, Henry G. Newton, one of the referees of said court in bankruptcy, do hereby certify that, in the course of said proceedings before me, there arose a question as to the allowance of the claim of Clark Bros. Bolt Company.

July 19, 1906, the bankrupt made a contract, a copy of which is hereto appended, to furnish to Clark Bros. Bolt Company 500 tons, of 2,000 pounds each, bright or annealed and cleaned Bessemer or basic bolt wire before January 1, 1907. The orders specified on the list annexed hereto were not filled.

About the same time with said agreement of the bankrupt, Clark Bros. Bolt Company had made a contract with the American Steel & Wire Company for 500 tons to be furnished on or before July 1, 1907. At the time of making these two agreements, they had orders which would require the whole 1,000 tons.

It was customary for them, in July, to accept orders running through the year following, and the 1,000 tons was what they expected would be needed to enable them to fill their orders for the year; and the whole 1,000 tons were in fact so needed. By reason of the failure of the National Wire Corporation to fill their orders, they were obliged to use nearly the whole 500 tons, which they were entitled to receive under the agreement from the American Steel & Wire Company, during the latter part of 1906.

On December 15, 1906, they gave an order, as appears on the memorandum of unfilled orders annexed to the proof of claim. With this order was sent a letter as follows:

"Dec. 15, 1906.

"National Wire Corp., New Haven, Conn.

"Gentlemen: Referring to recent correspondence in reference to amount of tonnage on contract not specif'ed for, we enclose orders aggregating 250 tons, which just completes our contract. We understand that you are not in position to ship this promptly, and that being so it may be possible that we will have to change some of the sizes later on to agree with our requirements, at such time as you can deliver same.

"Yours very truly,	[Stamped]	Clark Bros. Bolt Co."

It was the intention of Clark Bros. Bolt Company, in giving this order, to change the items from time to time, as they might have occasion, as to any part thereof which had not been furnished at the time of the change. It is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

customary in the trade to allow such changes where the purchaser has occasion to make them.

December 19, 1906, temporary receivers were appointed by the superior court for New Haven county for the National Wire Corporation, and the appointment was confirmed a short time thereafter; and, on January 6, 1907, the receivers notified Clark Bros. Bolt Company that they would probably not be able to fill their orders.

March 26, 1907, Clark Bros. Bolt Company made an agreement with the American Steel & Wire Company for 500 tons of wire at the price of $2 for bright Bessemer, $2.10 for bright basic, and $2.10 for annealed and cleaned. This agreement of March 26, 1907, Clark Bros. Bolt Company were obliged to make in order to obtain the wire which they would have received if the agreement with bankrupt had been carried out. The additional expense which Clark Bros. Bolt Company were obliged to pay for wire was 30 cents per hundred pounds for bright Bessemer, 35 cents per hundred for bright basic, and 35 cents per hundred for annealed and cleaned.

There was no time, between the time when they had reason to believe that bankrupt would not fulfill its agreement and March 26, 1907, when the price of wire in the market was less than that which they agreed to pay in their contract of March 26, 1907. Whether there was any time during this period at which a contract for 500 tons could be made for a less price was not otherwise proved, and it was not shown whether there was any time during said period at which the market price of wire was less than it was on March 26, 1907.

Claimant used its best judgment and discretion for obtaining the wire necessary to replace that agreed to be furnished by bankrupt on the best terms obtainable.

I find that the damage suffered by failure to fulfill the contract of the National Wire Corporation was:

578,000 lbs. Bright Bessemer, @ .30 per hundred, advance... =$1,734 00
30,000 lbs. Bright Basic, @ .35 per hundred, advance...... =  105 00
344,284 lbs. Annealed and Cleaned, @ .35 per hundred, advance ............................................. = 1,204 99
                                                                     _____
                                                                     $3,043 99

And I allow the claim of Clark Bros. Bolt Company at $3,043.99.

Mr. Beach made three claims: (1) That the claim should only be allowed upon the orders prior to December 15, 1906. (2) That Clark Bros. Bolt Company having used the wire contracted for from the American Steel & Wire Company under their contract of July, 1906, the damage should only be computed at the price mentioned in that contract, which would be a difference of .15 per hundred pounds. (3) That the contract of March 26, 1907, did not constitute any proper measure of damage, and that such contract should be entirely disallowed.

These claims were overruled, the referee holding that Clark Bros. Bolt Company were entitled to compensation for the wire not being furnished, and that such compensation should be measured by the price which they had to pay for additional wire in consequence of such failure; and that they were not obliged to base their claim upon the price named in the contract with the American Steel & Wire Company, which had already been entered into, and all of which they would need in addition to the wire specified in the contract of Clark Bros. Bolt Company with the National Wire Corporation.

William H. Ely, for claimant.
Edward A. Harriman, for trustees.

PLATT, District Judge. Just a word supplementing the decision of the referee. I think that the order of December 15, 1906, was a specific compliance with the terms of the contract. It is unimportant that, after the order had been given in specific form, the claimant volunteered a statement intimating a possibility that at a later date a

change in sizes might be seasonably suggested. The wire company upon receipt of the letter of December 15th was in possession of all data necessary to enable it to carry out its bargain. We are not concerned with what might have happened at some later, remote, uncertain date.

In the light of my views about the first point, it is useless to discuss the question of the effect of trade customs upon contracts. The receivers repudiated the contract. The rights of the claimant against the receivers, if they had continued in power, is one thing, but its rights against the trustees in bankruptcy is quite another thing.

It is not too clear that, with such a state of facts presented as we have here, the Supreme Court of Connecticut would say that the claimant could not pursue its claim for damages upon contract broken against the receivers. It will be observed that on page 39 of 76 Conn. and page 603 of 55 Atl. (Wells v. Hartford Manilla Co.) the court uses this language:

"We do not, however, wish to be understood as saying that there may not be frequent cases where the act of a receiver in not adopting an executory contract would entail such injury upon the other party to the contract, by reason of what he had already done under it and relying upon the faith that it would be carried out, that a claim against the estate would, upon the principles of equity and good conscience which underlie receivership proceedings, be recognized and allowed. There are, however, no such elements of damage in this case."

Equity and good conscience would seem to be valuable assets in the hands of the present claimant at this particular juncture.

I decided a case involving the breach of an executory contract on March 7, 1907. It will be found in Re Spittler (D. C.) 151 Fed. 942. I was not then compelled to pass upon the specific question of whether an adjudication per se would work a breach of such a contract, but intimated that I would so hold, if the emergency ever arose. See 151 Fed. 943. I am not sure now that I am forced to that point.

As above suggested, the state receivers repudiated the contract. Prior to the receivership, the National Wire Corporation backed and filled, and put the claimant to much trouble and expense. The receivers emphasized the trouble, and at last the adjudication put on the finishing touches.

I think the contract of March 26, 1907, does furnish a basis for the court to work upon in arriving at a just estimate of the damage suffered by the claimant. Because the steel ordered in advance from the American Wire Company for other uses was to some extent diverted from its original destination to tide over the worst spots in the claimant's business, cannot, as I view the matter, put the claimant in a position where it must accept the price paid for that steel as the basis of its loss on this broken contract.

With apologies for haste, the decision of the referee is affirmed.