## In re MULLINGS CLOTHING CO.

(District Court, D. Connecticut. March 3, 1916.)

### No. 3613.

1. BANKRUPTCY ⊕=318(4)—CLAIMS—CLAIMS FOR "RENT."

A claim by a bankrupt's lessor for the difference between the rent which the bankrupt had agreed to pay for leased premises and the amount which a new tenant had agreed to pay was a claim for "rent," though called by the lessor a claim for damages from the breach of an agreement to lease.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 482; Dec. Dig. ⊕=318(4).

For other definitions, see Words and Phrases, First and Second Series, Rent.]

2. LANDLORD AND TENANT ⊕=194(2)—SURRENDER OF PREMISES—ACCEPTANCE—LIABILITY FOR RENT.

A corporation, having a lease expiring October 1, 1914, entered into a written agreement for a lease for five years from October 1st at $1,000 per month. Thereafter, in an action to wind up its affairs, a receiver was appointed, who, prior to October 1st, repudiated the lease and notified the

landlord of his refusal to be bound thereby. He remained in possession until October 23d, on which day the premises were turned over to J., to whom the receiver had sold the corporation's stock, fixtures, etc., and J. occupied the premises with the landlord's knowledge and consent until the last Saturday of November, when his property was removed. The keys were left on the premises for the landlord, and he immediately entered and continued in possession until about March 1st, when he leased them to a new tenant for a term beginning March 1st. The receiver paid rent until October 1st, and by agreement with the landlord paid $800 as rent for October, and J. paid the same amount for November. The landlord did not demand payment of any rent under the new lease, but after an adjudication in bankruptcy in December he filed a claim for breach of the contract of lease. *Held*, that the landlord accepted the surrendered premises, and had no allowable claim, since, where a landlord takes possession after a surrender by a lessee and lets the premises to another person, he will be deemed to have accepted the surrender, unless facts are shown sufficient to rebut this inference, and no such facts were shown.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 788; Dec. Dig. ☞194(2).]

3. LANDLORD AND TENANT ☞181—RENT—NATURE OF "RENT."

"Rent" is a sum stipulated to be paid for the use and enjoyment of land; the occupation of the land being the consideration for the rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 730; Dec. Dig. ☞181.]

4. LANDLORD AND TENANT ☞202(1)—RENT—WHEN RENT ACCRUES.

As a general rule rent does not accrue to a lessor as a debt until the lessee has enjoyed the use of the land, though the liability does not always depend upon the actual occupancy of the premises during the time for which recovery is sought.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 802, 803, 805; Dec. Dig. ☞202(1).]

5. LANDLORD AND TENANT ☞194(1)—LIABILITY TO PAY RENT—EXCUSES.

Nothing but a surrender, a release, a waiver, or an eviction can wholly or partly absolve a tenant from the obligation of his covenant to pay rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 788, 789; Dec. Dig. ☞194(1).]

6. LANDLORD AND TENANT ☞195(2)—LIABILITY TO PAY RENT—ACCEPTANCE OF NEW TENANT.

Where a lessor has consented to a change in the tenancy and received rent from the new tenant, he cannot afterwards charge the original tenant for rent accruing subsequent to such change.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 792, 793; Dec. Dig. ☞195(2).]

7. LANDLORD AND TENANT ☞194(2)—LIABILITY TO PAY RENT—"ABANDONMENT" AND RE-ENTRY.

Where a tenant abandons premises, and the landlord without protest enters and resumes possession, such act will generally be construed as constituting a surrender by implication of law; and an "abandonment" will always be found where the circumstances are such as would justify the landlord taking immediate possession upon the tenant's relinquishment thereof.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 788; Dec. Dig. ☞194(2).

For other definitions, see Words and Phrases, First and Second Series, Abandonment.]

**8. BANKRUPTCY ☞314(2)—CLAIMS PROVABLE—CLAIMS FOR RENT.**

Any amount due for rent of premises used by a bankrupt tenant as well as any periodical payments reserved in a lease which have accrued at the time of the filing of the petition in bankruptcy, are claims presentable and allowable against the bankrupt estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 470; Dec. Dig. ☞314(2).]

**9. BANKRUPTCY ☞347—COSTS OF ADMINISTRATION—RENT.**

Where a receiver or trustee in bankruptcy actually occupies leased premises, rent for such occupancy and use is payable by the receiver and allowable as part of the cost of administration, not because of any reservation of rent in the lease, but because the use of the premises was considered necessary to the preservation of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 538; Dec. Dig. ☞347.]

**10. BANKRUPTCY ☞314(2)—CLAIMS PROVABLE—"ABSOLUTELY OWING."**

The status of a claim at the time of filing a petition in bankruptcy, and not at any subsequent time, fixes the right of its owner to share in the distribution of the estate of the bankrupt; and if it be owing at the time of the filing of the petition, it may be proved, but if it becomes due subsequently, even if before adjudication, it is not a claim to be considered as one "absolutely owing."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 470; Dec. Dig. ☞314(2).

For other definitions, see Words and Phrases, Second Series, Absolutely Owing.]

**11. BANKRUPTCY ☞314(2)—CLAIMS PROVABLE—EQUITIES.**

Where a bankrupt's lessor, in negotiating the lease, was interested in nothing but his own personal welfare, and entered into the lease on terms which apparently were largely to his own advantage, and to the disadvantage of the bankrupt, and it appeared probable that the premises could not be rented to any one else on terms equally as beneficial to himself as those he obtained from the bankrupt, there were no equities in favor of his claim for rent accruing subsequent to bankruptcy, as one seeking equity must do equity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 470; Dec. Dig. ☞314(2).]

**12. BANKRUPTCY ☞318(4)—CLAIMS PROVABLE—CLAIMS FOR RENT.**

Bankr. Act July 1, 1898, c. 541, § 63a, 30 Stat. 562 (Comp. St. 1913, § 9647), authorizes debts to be proved which are a fixed liability absolutely owing at the time of the filing of the petition, whether then payable or not, or which are founded upon contract, and section 63b provides that unliquidated claims may be liquidated as the court shall direct, and then allowed. Gen. St. Conn. 1902, § 4045, provides that on destruction or substantial injury to leased premises the tenant is excused from paying rent while the premises remain out of repair. A lease contained no provision whereby, in case of insolvency, receivership, or bankruptcy proceedings, rent covering any time subsequent to such event would become immediately due, but provided that, on neglect to pay rent for 10 days after it became payable, the lease would become ipso facto terminated, and the landlord might retake possession, and that the lessee might assign the lease at its pleasure without any further responsibility for rent. *Held*, that in view of these provisions, and the provisions of the statute, any claim for rent accruing subsequent to bankruptcy, or for damages from the breach of the agreement to lease, was not only unliquidated, but contingent, and not provable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 482; Dec. Dig. ☞318(4).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the Mullings Clothing Company. On petition by John B. Mullings for a review of certain rulings of the referee. Rulings sustained.

Lawrence L. Lewis, of Waterbury, Conn., for petitioner.

Terrence F. Carmody and William J. Larkin, Jr., both of Waterbury, Conn., for trustee.

THOMAS, District Judge. This is a petition brought by John B. Mullings to review certain rulings of the referee made in relation to a claim which the petitioner attempted to file and prove against the bankrupt estate of the Mullings Clothing Company. The essential facts, practically undisputed, are as follows:

On July 25, 1913, the bankrupt corporation was and for many years prior thereto had been conducting a general clothing and men's furnishing business in a store belonging to the petitioner under the terms of a written lease which expired October 1, 1914, in which it was provided, among other things, that the corporation should pay rent for the premises at the rate of $800 a month.

On said July 25, 1913, the parties entered into a written agreement for a lease of the premises for a further period of five years beginning at the expiration of the old lease, to wit, October 1, 1914, by the terms of which the corporation was to pay the petitioner rent at the rate of $1,000 per month during the five-year period agreed to in the new lease.

On August 19, 1914, the directors of the bankrupt corporation voted "to discontinue the business and wind up its affairs." A few days later all stockholders joined in an action, returnable to the state court, praying for the appointment of a receiver to take charge of the business of the corporation and wind up its affairs.

Pursuant to that action, and on August 21, 1914, Carl A. Macomber was appointed by the state court temporary receiver, and on October 19, 1914, he was confirmed as permanent receiver. The court authorized the receiver to take charge of and continue the business of the corporation until the same should be disposed of by order of court. The receiver qualified and took possession of the assets and the business of the corporation.

On the 18th of September, 1914, acting upon the advice and order of the superior court, the receiver repudiated the contract of lease, refused to be bound by its terms, and notified the petitioner of such action. Counsel for both parties admit that a complete repudiation of the lease by the receiver took place.

The receiver continued to occupy the petitioner's premises until October 23, 1914. On that day he turned the keys of the store over to J. H. James, to whom the receiver sold all of the corporation's stock, fixtures, etc., in accordance with an order of the superior court. Thereupon James took possession and continued to occupy the premises with the knowledge and consent of the petitioner until the last Saturday of November, 1914, when all of James' property was removed therefrom. The keys were left on the premises by one G. E. Donnelly, formerly secretary of the corporation, in order that the

petitioner might get them. Immediately thereafter the petitioner obtained the keys, entered the store, and continued in possession of the premises until about March 1, 1915.

On January 23, 1915, the petitioner entered into a new contract of lease of said premises with a new tenant, in which it was provided among other things, that the term of the new lease should begin March 1, 1915, and that the annual rental should be $9,000, payable in monthly installments of $750; this being the most favorable price the petitioner was able to obtain. James paid the petitioner $800 as rent for the use of the store for the month of November, 1914.

The receiver paid rent to the petitioner from the date of his appointment until October 1, 1914, as required by the terms of the old lease. For the month of October he paid him $800, in accordance with a stipulation which the attorneys for both sides entered into, and which became the basis of an order passed by the state court, which stipulation was as follows:

### "Stipulation.

"In the matter of the amount to be paid by the receiver to the landlord, John B. Mullings, for use and occupation of the store and premises in the property of said landlord, Mullings, by the receiver of the Mullings Clothing Co. during the month of October, 1914.

"It is hereby stipulated by and between counsel for the receiver and counsel for said Mullings, by and with the consent of the court, that the receiver shall pay $800, and that same shall be accepted by said Mullings in full for his claim against said receiver on that account."

No evidence was produced to show that the petitioner ever demanded payment of any portion of the rent required by the terms of the new lease from either the receiver or any officer of the corporation after the state court had appointed the receiver; and no claim has been made in these bankruptcy proceedings that any sum for rent was due or had become payable from the corporation to the petitioner at the time of the corporation's adjudication in bankruptcy. There is also nothing to show that the petitioner ever filed a claim with the state court receiver for any damages which he may have suffered by reason of a breach of the contract of lease on the part of the bankrupt corporation then in the hands of a receiver.

On December 30, 1914, the Mullings Clothing Company was duly adjudicated a bankrupt, upon its own petition filed on that day, and the matter was referred to the referee in bankruptcy for New Haven county. The first meeting of creditors was held January 18, 1915, and at this meeting counsel for the petitioner offered for proof a claim against the bankrupt estate in the sum of $20,000 damages, claimed for breach of the contract of lease, although at this time the premises had not been relet. Objection to the filing of the claim was made by the attorneys for creditors, on the ground that the claim was one for rent of the premises under the lease repudiated by the receiver of the state court, and was therefore, at most, an unliquidated claim. The referee sustained the objection and refused to permit the claim to be filed or voted until testimony was offered sufficient to show that the claim was one allowable by the Bankruptcy Act, and ad-

journed the first meeting in order to give counsel for the petitioner an opportunity to produce such testimony.

At the adjourned hearing the petitioner attempted to show by competent witnesses the reasonable rental value of the premises for a period of five years beginning October 1, 1914, as compared with the rent reserved in said repudiated lease covering the same period; it being contended by counsel that he had the right to do this in order that the referee might ascertain and liquidate the amount of the damage caused petitioner by the breach of the lease agreement. Counsel further claimed that the difference thus shown, amounting to $15,000, should be found as the damage actually sustained by the petitioner.

Technically speaking, there had not been, up to this time, any petition filed with the referee requesting him to ascertain and liquidate the damage, though petitioner's counsel had indicated his willingness to have the referee ascertain and liquidate the damage. The referee, however, sustained the objection to the evidence, refused to admit that offered, and denied the petitioner the privilege of filing and voting his claim on the question of electing a trustee.

Eight days after John B. Mullings filed his petition asking that the loss to him by the breach of the lease be ascertained and liquidated by the referee and that he then be permitted to file for allowance so much of the claim as the referee might find was due. The trustee's attorney objected, and filed a motion to dismiss the petition. Thereupon the petitioner, with leave of the referee, filed an amended petition showing that since the first hearing the premises had been leased as above stated to another tenant for a five-year period from March 1, 1915, at a yearly rental of $9,000, payable $750 monthly. Thereupon the trustee's attorney filed another motion to dismiss this petition, and after due hearings had the referee granted the motions and dismissed both petitions.

The lease in question contained no provision whereby, in case of insolvency, receivership, or bankruptcy proceedings any portion of the rent reserved therein, covering any time subsequent to such event, would become immediately due, and be an ascertained and fixed liability or debt due from the corporation and presentable against its estate. It did provide, however, that in case the rent should remain unpaid for 10 days after the same became payable under the terms of the lease that the lease would thereby terminate, and the lessor might then recover possession of the premises in the manner prescribed by the Connecticut statute relative to summary process, and that the necessity of demand on the part of the lessor for the rent and for re-entry for condition broken, as at common law, as well as to that of the actual notice to quit as required by the statute, were expressly waived by the lessee. Another provision gave the corporation the right to assign the lease and to sublet the premises for the purpose of conducting any similar business, or for a dry goods or millinery business.

The petition for review raises the question whether the petitioner's claim is one provable under section 63, subdivisions "a" and "b" of the Bankruptcy Act, the essential parts of which read:

"(a) Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest;  *  *  *  (4) founded upon an open account, or upon a contract express or implied;  *  *  *

"(b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

In the judgment to be rendered here the court must follow the decision of the Circuit Court of Appeals for this Circuit in the Matter of Roth & Appel, 181 Fed. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270. But aside from that decision there seem to be various reasons why the rulings of the referee must be sustained.

[1] The petitioner says that his claim is not one for loss of rent, but asserts that it is one for the recovery of damages caused by breach of an agreement to lease, and that the damage is to be measured by the difference in the amount of rent which the bankruptcy corporation agreed, by the terms of the lease, to pay for the whole term and the amount which the new tenant, now in the premises, has agreed to pay for the balance of the term covered by the same lease. But with whatever name the petitioner has chosen to clothe his claim it must, in any event, be considered as one for rent only. Miller v. Benton, 55 Conn. 529, 13 Atl. 678.

[2] The petitioner's action relative to the control of the premises after they were surrendered to him, coupled with the fact that at no time did he protest the repudiation of the lease by the receiver of the state court, or in fact any other act which the receiver did in relation to the premises; the petitioner's acceptance, also without protest, of the sum which the receiver paid him for use of the premises during the month of October, 1914, and the like sum of $800 paid him by James for his occupancy of the store during the month of November; his failure to make any claim in the state court receivership proceedings for damages because of the breach of contract of lease as well as his subsequent failure to make any demand for rent on the receiver or any one connected with the corporation previous to the commencement of bankruptcy proceedings—all seem to me to be the strongest kind of evidence to refute the petitioner's claim and to justify the referee's conclusion that the petitioner intended to accept and actually did accept the surrendered premises, and had repossessed himself thereof as of his former estate long before the filing of the petition in bankruptcy, and that as a consequence he was not the holder of any allowable claim against the bankrupt corporation at the time he sought to file that which now forms the basis of the controversy here.

It seems to be well settled that, where a landlord takes possession of property after its surrender by a lessee and lets it to another person, he will be deemed to have accepted the surrender, unless facts are shown sufficient to rebut this inference. Kerr on Real Property, § 1287; Underhill v. Collins, 132 N. Y. 269, 30 N. E. 576; Miller v. Benton, supra. No facts having been shown to bring the petitioner within the exception, it must be held that he accepted possession of

the premises when surrendered. Hence he could not have been injured by the ruling of the referee in respect to this feature of the case.

[3-7] Rent is a sum stipulated to be paid for the use and enjoyment of land; the occupation of the land being the consideration for the rent. As a general rule, however, rent does not accrue to the lessor as a debt until the lessee has enjoyed the use of the land, though the liability therefor does not always depend upon the actual occupancy of the premises during the time for which recovery is sought. Nothing but a surrender, a release, a waiver, or an eviction can in whole or in part absolve a tenant from the obligation of his covenant to pay rent, though a release may be implied from the conduct of the parties, and where a lessor has consented to a change in the tenancy and received rent from the new tenant, he cannot afterwards charge the original tenant for rent accruing subsequent to such change. Where the tenant abandons the premises, and the landlord, without protest, enters and resumes possession, such act will generally be construed as constituting a surrender by implication of law. An abandonment will always be found where the circumstances disclosed are such as would justify the landlord taking immediate possession of the premises upon the tenant's relinquishment of the same.

[8] It goes without saying, however, that any amount which may have been due for rent of premises used by a bankrupt tenant, as well as any periodical payments reserved in a lease which have accrued at the time of the filing of the petition in bankruptcy are claims presentable and allowable against the estate. In re Ladue Tate Mfg. Co. (D. C.) 135 Fed. 910; In re Saxton Furnace Co. (D. C.) 142 Fed. 293. They are so presentable and allowable because they are definite and fixed liabilities owing at the time of the commencement of the bankruptcy proceedings.

[9, 10] Where a receiver or trustee in bankruptcy actually occupies the leased premises, rent for such occupancy and use is payable by the receiver and will be considered a preferred claim in favor of the landlord, not because of any reservation of rent mentioned in the lease, but because the use of the premises was considered necessary to the preservation of the estate, and the amount paid by the receiver or trustee for such occupancy will be allowed as part of the cost of administration. In re Hersey (D. C.) 171 Fed. 1001; In re Youdelman-Walsh Foundry Co. (D. C.) 166 Fed. 381. The status of a claim at the time of filing the petition in bankruptcy, and not at any subsequent time, fixes the right of its owner to share in the distribution of the estate of the bankrupt. If it be owing at the time of the filing of the petition, it may be proved; but if it becomes due only after the filing of the petition, even if before adjudication, it is not a claim to be considered as one "absolutely owing." Board of County Commissioners v. Hurley, 169 Fed. 92, 94 C. C. A. 362; Phœnix National Bank v. Waterbury, 197 N. Y. 161, 90 N. E. 435; Zavelo v. Reeves, 227 U. S. 625, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664. Rent on a lease for years, unaccrued at the time of adjudication, cannot be proved as a claim in bankruptcy. In re Rubel (D. C.) 166 Fed. 131.

[11] The petitioner makes no pretense that the breach of the contract of lease was caused by or resulted from the filing of the petition in bankruptcy, but rather that it was caused by the action of the corporation in starting the winding-up proceedings in the state court and by the act of the state court receiver in repudiating the lease. So that the decision in the case of the National Wire Corporation (D. C.) 166 Fed. 631, cited and relied upon by the petition is not, as it seems to me, at all in point. In view, however, of the fact that counsel for the petitioner lay great stress upon the equities which arose in that case, and now claim that they should be applied here, it might be well to remember that the damages there claimed were based upon the fact that a certain amount of wire was contracted to be furnished the claimants by the bankrupt corporation, and on account of the latter failing to keep its engagements claimants were caused a lot of trouble, and were also obliged to pay an advanced price for wire purchased by them from another concern. The referee held, and the District Court sustained the ruling, that the claimants were entitled to compensation because the wire was not furnished, and that the compensation should be measured by the difference between the contract price and the advance price which the claimants were obliged to pay for the wire purchased from the other concern.

The facts and circumstances of that case and the one here are so entirely different that the view taken by Judge Platt can have, as I view it, no possible bearing upon the decision which I am called upon to render here. There the facts disclosed equities so strongly in favor of the claimants that the court was fully warranted in giving them solicitous consideration, while here we find that Mullings was not adverse to entering into an agreement with the corporation for a lease of his property on terms which very much appear to have been largely to his own advantage and to the disadvantage of the corporation. There is nothing in the case which indicates that petitioner, in negotiating the lease, was interested in anything but his own personal welfare; and subsequent events tend to show that he would have found it next to impossible to rent the premises to any one else on terms equally as beneficial to himself as those he obtained from the corporation. "He who seeks equity must do equity" is the maxim which applies, if the equities of the case are to be urged.

The case of In re Frederick L. Grant Shoe Co., 130 Fed. 881, 66 C. C. A. 78, referred to and urged by petitioner to support his contention, was a claim for damages for breach of warranty in the sale of personal property, where the damages were certain, but the amount unliquidated. It was held there, of course, that the amount of the damage could be liquidated, and when found by the court the claim could be filed. There was nothing in that case to indicate the impossibility of ascertaining the real damage which the claimant had sustained, while in the matter here under consideration it appears that until the expiration of the whole period covered by the lease in question it would be impossible to tell whether the breach of contract of lease would or would not prove to be of advantage to the petitioner.

[12] Where a claim is presented for breach of a contract of lease

wherein payments of rent for future occupancy have been reserved, as in the present case, an entirely different situation is presented. By the terms of the lease in question it will be noted that upon the neglect of the bankrupt corporation to pay any monthly payments of rent reserved therein for a period of 10 days after the date when the same became payable, as well as for other causes not necessary to mention here, the lease was to become ipso facto terminated, and the petitioner would then have the right to repossess himself of the leased premises. It was also provided that the lessee might assign the lease at its pleasure, and, if it did, no further responsibility for rent to become due subsequently could be claimed against it. It is provided by section 4045 of the General Statutes of Connecticut, Revision of 1902, that in the event of certain happenings as to the destruction or substantial injury to premises during the period covered by a lease the tenant is excused from paying rent for the occupancy of such premises during the time they remain out of repair. All these matters tend to the conclusion that any claim for damages based upon the breach of such a lease must necessarily be contingent. A test as to whether a claim is really contingent or simply one unliquidated or unascertained by legal proceedings would seem to be this: Have all the facts necessary to be proved to fasten liability already occurred? If so, the claim is not contingent, although the liability and the extent of damages may not yet have been ascertained by proper legal proceedings. As long, however, as it remains uncertain whether a contract would ever give rise to an actual duty or liability and there is no manner of removing the uncertainty by calculation, it is too contingent to be a provable debt. Remington on Bankruptcy, § 641.

Petitioner's counsel, in their very elaborate and exhaustive brief, have shown remarkable astuteness in their attempt to extricate their client from the embarrassing situation in which they find him because of the decisions of the Supreme Court of Errors of Connecticut in Wells v. Hartford Manilla Co., 76 Conn. 27, 55 Atl. 599, and Miller v. Benton, supra. In the first of these cases application was made to the state court and a receiver appointed to take charge of and wind up the affairs of the defendant corporation. The receiver afterwards refused to assume or adopt a certain unfulfilled contract which the corporation had long before entered into with the plaintiff, who claimed that by the receiver's abandonment of the contract he had bound the estate in his hands to respond for the damages which such abandonment had occasioned, and that therefore plaintiff was entitled to have the extent of the damages caused him allowed as a general claim against the estate which was found to be insolvent. The court held, however, that it was the privilege of the receiver, in acting for the best interests of the estate and its creditors, not only to elect what contracts he would assume or reject, but to make the election without in the least subjecting the fund required for the satisfaction of existing claims of creditors to a charge for damages, and that such election could not result in allowing plaintiff to present a general claim entitling him to share with other creditors in the assets of the estate. The court said, further, that if the law were otherwise there might be danger

that a portion of an insolvent estate needed to pay creditors, where claims were already fixed ones, would be thus exhausted to their injury; that in such a case the rights of a claimant for damages, based upon the breach of a contract caused by such act of a receiver, were simply subordinated to those of others standing in a higher position, and that the equity of the rule was quite apparent, as no one would suffer any loss unless the insufficiency of the estate's assets compelled it; that another way of exhausting it was, "where such insufficiency was found to exist, creditors holding claims, the liability for which had become fixed before the receiver's appointment, should not be obliged in any degree to yield to those of others who might seek to secure to themselves profits which the future, by reason of a good bargain, might have in store for them." The court also held that because there did not appear to have been such an out and out act on the part of the Manilla Company as to indicate an intention to renounce its obligations under the contract, and no such unequivocal act by the plaintiff showing his acquiescence in such renunciation before the commencement of receivership proceedings, no breach of contract had in fact occurred before the receivership proceedings, and that the trial court had committed error in finding that a matured claim had existed prior thereto based on such breach. Consequently it was held that the plaintiff's claim was not allowable for proof as a general claim. Judge Prentice, who wrote the opinion, intimated, however, that an after-accruing claim, such as the plaintiff's, might be payable out of any balance left in the receiver's hands after the satisfaction of general claims existing at the date of his appointment and before such balance was returned by the receiver to the debtor. In Lippitt v. Thames Loan & Trust Co., 88 Conn. 185, on page 206, 90 Atl. 369, on page 376, Judge Wheeler says:

"No debt can arise against an insolvent estate in the hands of a receiver. From this principle comes the general rule that only claims as then existing can be recognized as obligations of the estate."

In Miller v. Benton, supra, the court held that where a lessee gives notice of his refusal to comply with the terms of his lease in so far as concerns the payment of rent (unless the lessor joins with him in rescinding the contract), the act of the lessee does not constitute such a breach as will permit an action to lie for damages occasioned by such breach, but that the lessee is nevertheless liable for rent as such when it becomes due.

In whatever light we may view the situation presented because of the decisions in these two cases, we must, of necessity, come to the conclusion that it is sufficient to defeat the petitioner's claim in the case at bar.

The petitioner further relies upon Board of Commerce of Ann Arbor v. Security Trust Co., 225 Fed. 454, 140 C. C. A. 486. In that case the Board of Commerce of Ann Arbor, Mich., and the Climax Specialty Company, then located at Schenectady, N. Y., entered into an agreement whereby the board agreed to procure for the company a factory site at Ann Arbor without cost to the company

and to advance it sufficient money (up to $7,500) to cover the cost of moving the company's plant to Ann Arbor. The board also agreed to dispose of the first $75,000 of a $100,000 bond issue of the company. The company guaranteed that for the first year after its removal to Ann Arbor, which was on January 1, 1911, its pay roll for the factory employés alone would, during the first year amount to at least $50,000, during the second year $75,000, and for each year during a five-year period thereafter $150,000, and that in case its pay roll for factory help during any two consecutive years would not equal that which it agreed it would amount to (barring strikes, labor troubles, fire, and any other cause over which the company had no control), it would pay to the board, as trustee, $10,000 as liquidated damages for this breach of its contract. The company continued to operate its factory only until May 10, 1911, and on July 24th of that year was adjudicated a bankrupt on its own petition. The board presented a claim for $10,000 to the estate, and objection to its allowance was made by the trustee. The question was whether the claim was one owing at the time of the commencement of the bankruptcy proceedings. The court upheld the right of the board to have its claim allowed, and Judge Hollister, writing the opinion for the Circuit Court of Appeals, said that, the court having found that the corporation's adjudication in bankruptcy had created an anticipatory breach of the contract, the right to sue became coincident with the bankruptcy, and that as a consequence it would seem that the fixed sum which had been agreed upon by the parties, and which the court construed as liquidated damages, and not as penalty, might be proved, either under subdivision 1 or subdivision 4 of section 63 of the Bankruptcy Act. From the very fact that the court found the claim there presented to be liquidated and unsatisfied, it would seem that the owner in any event should have been allowed to prove it.

In re Stern, 116 Fed. 604, 54 C. C. A. 60, was an appeal from the judgment of the District Court adjudicating the Manhattan Ice Company a bankrupt, because certain persons who had sustained damages by the breach of executory contracts whereby that corporation had agreed to furnish them ice covering a period of years at a certain price per ton, a portion of the full period covered by the contract not having then expired, were allowed to join as creditors in the bringing of an involuntary petition in bankruptcy against the corporation upon their showing that they had already been damaged to a considerable extent by the corporation's refusal to carry out its agreement to furnish them ice, and because they had been unable to obtain ice at as low a price from any other party. Judge Townsend, in his opinion upholding the decision of the District Court, went into an extensive review of the cases on both sides of the question as to what should be considered as provable debts under sections 63a and 63b of the Bankruptcy Act. But it would take a very much strained construction of the opinion in that case to enable one to find anything in it which could be taken as indicating any error on the part of the referee in the rulings made by him in the matter now under consideration.

At first glance, the opinion in People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129, also cited by the petitioner, would impress one with the idea that that case supports the petitioner's contention; but a careful reading of the opinion discloses that the question there turned upon the difference in the limited powers conferred by the statutes of New York as an assignee for the benefit of creditors and the more liberal ones conferred by other sections of the same statutes on receivers of insolvent corporations, taken together with the large discretionary powers vested in courts appointing such receivers and to whose orders they were expected to conform.

But why continue to traverse fields afar in the endeavor to seek the light necessary to aid us in reaching the right conclusion here? Many of the cases referred to by the petitioner, which he claims sustains the principles of law urged upon the court, are cases in which damages were claimed by lessees because of refusal on the part of the lessors to permit the lessees to enjoy the use of the premises leased to them, or were cases where indorsers or holders of promissory notes, etc., which had not yet become payable, but were outstanding obligations, were permitted to file claims against bankrupt estates, while in others, like In re Neff, 157 Fed. 57, 84 C. C. A. 561, 28 L. R. A. (N. S.) 349, the facts were such that little analogy can be found to exist between them and the matter in question here.

Whether or not the case of People v. St. Nicholas Bank should be considered a precedent in favor of the propositions urged by the petitioner matters not, for I feel bound to follow the principles of law laid down by the highest state court in this district in Wells v. Hartford Manilla Co., supra. See also People v. Metropolitan Surety Co., 205 N. Y. 135, 98 N. E. 412, Ann. Cas. 1913D, 1180. And, as before stated, my decision must in the main be governed by the opinion of the Circuit Court of Appeals for this Circuit in Roth v. Appel, supra, wherein Judge Noyes, who wrote the opinion of the court, said:

"The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of debitum in præsenti solvendum in futuro. On the contrary, the obligation upon the rent covenant is altogether contingent. * * * It follows from these principles that rent accruing after the filing of a petition in bankruptcy against the lessee is not provable against his bankrupt estate as 'a fixed liability * * * absolutely owing at the time of the filing of the petition,' within the meaning of section 63a (1) of the Bankruptcy Act of 1898. It is not a fixed liability, but is contingent in its nature. It is not absolutely owing at the time of the bankruptcy, but is a mere possible future demand. Both its existence and amount are contingent upon uncertain events. * * * Even under the Bankruptcy Acts of 1841 and 1867, which, unlike the present act, expressly permitted the proof of contingent demands, claims for unaccrued rent were not provable. * * * The present bankruptcy statute * * * does not provide for the proof of contingent claims. * * * Section 63b adds nothing to the class of debts provided under 63a. It merely permits the liquidation of an unliquidated claim provable under the latter provision."

In view of the circumstances of this case I have deemed it necessary to discuss at much length the several points raised by the petitioner in his exhaustive brief, in order to properly dispose of the whole question, which might, with propriety, have been disposed of on the authority of Wells v. Hartford Manilla Co., Miller v. Benton, and Roth v Appel, supra.

The conclusion is imperative—and sound, as I view the law—that the referee properly granted both motions to dismiss, and his rulings are sustained.

Decree accordingly.